**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re Dimensions In Senior Living, LLC et al.,[1] | ) | Case No. 22-80860 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Joint Administered |

## STIPULATED ORDER GRANTING MOTION FOR ORDER APPROVING BIDDING PROCEDURES

This matter comes before the Court on the Debtors' *Motion for Order Approving Bidding Procedures* (Filing No. 130) (the "Motion") requesting entry of an order approving certain bidding procedures to be used in connection with the sale of all or substantially all of Debtors' assets pursuant to sections 105, 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002, 6004, 6006, 6007, 9006, 9007, and 9013 of the Federal Rules of Bankruptcy Procedures ("the "Bankruptcy Rules") and Rule 2002-1, 6004-1, and 9013-1 of the Nebraska Rules of Bankruptcy Procedure (the "Local Rules"). This Court does hereby find as follows:

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

B. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Each Debtor remains in possession of its assets and continues to operate as debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

D. No Trustee or Official Committee of Unsecured Creditors has been appointed in this case.

E. On November 23, 2022, the Court entered an order granting Debtors' Motion to Limit Notice of pleadings in these Chapter 11 Cases. Also on November 23, 2022, the Court granted Debtor's oral motion at the hearing held thereon related to a number of Debtors' initial filings to waive Debtors' compliance with the requirements of Local R. Bank. P. 2002-1(B) and Appendix B to the Local Rules of this Court. Also on November 23, 2022, the Court entered an order granting Debtors' Motion For Authorization To: (A) Prepare A Consolidated List Of Creditors In Lieu Of Submitting Individual Mailing Matrices, (B) File A Consolidated List Of All Debtors' Largest Unsecured Creditors; (C) And Related Relief (the "Notice Orders"). Filing Nos. 14, 15, 22, and 29. Due and proper notice of the Motion was given pursuant to the Notice Orders and no other notice thereof is required. Filing No. 132.

F. Nebraska Economic Development Corporation ("NEDCO") filed a limited objection to the Motion. Filing No 150.

G. A hearing on the Motion and Objection thereto was held on March 20, 2023.

---

[1] Dimensions In Senior Living, LLC, Tax I.D. No. 76-0771058, Village Ridge, LLC, Tax I.D. No. 20-3042744, Village Place, LLC, Tax I.D. No. 81-2042780, WB Real Estate Of IOLA, LLC, Tax I.D. No. 46-5548614, Humboldt Assisted Living LLC, Tax I.D. No. 48-1221950, Wilcox Properties Of Columbia, LLC, Tax I.D. No. 43-1934089, Wilcox Properties Of Fort Calhoun, LLC, Tax I.D. No. 20-5822304.

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

    H.  Based upon the foregoing, good and sufficient cause exists to grant the Motion.

Based on the foregoing findings of fact, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. Subject to the terms contained herein, the Motion is granted.

2. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order and to enforce the provisions of this Order.

3. Nothing contained in this Order shall be construed as granting Debtor the right or authority to sell any of the Assets and no such written motion to request authority to sell Debtors' Assets pursuant to 11 U.S.C. §363 is before the Court.

4. The Bidding Procedures to be used for the purposes described in the Motion, including the sale of all or substantially all of Debtors' are approved as follows:

**AUCTION AND BIDDING PROCEDURES**

I. <u>Assets to be Sold</u>:  All assets of Debtors are being offered for sale (the "Assets"), including:

    (1) all assets identified in the Debtors' bankruptcy schedules;

    (2) all inventory, whether finished, work in process or raw materials;

    (3) all intellectual property rights;

    (4) all contractual or leasehold rights to be assume and assigned by Debtors; and

    (5) all assets acquired by the Debtors after the filing of this bankruptcy case.

Provided however, that Debtors, unless otherwise agreed to in writing, will not be offering for sale their cash, cash equivalents, accounts receivable, tax refunds, tax credits, causes of action possessed or owned by Debtors (including any recoveries related thereto), causes of action existing under the bankruptcy code, including Title 5 thereof (including any recoveries related thereto), and any assets that have been sold by Debtors during the pendency of these bankruptcy cases.

II.   <u>Bidding Procedures</u>

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the sale of the Assets to the Successful Bidder (as defined below), which are designed to facilitate a fair process (the "Bidding Process") and maximize the value of the Assets for the benefit of Debtors and their respective creditors, interest holders and bankruptcy estates.

    A.  <u>Preliminarily Qualified Bidders</u>

Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Debtors in consultation with American National Bank, Fannie Mae, or NEDCO (collectively the "Lenders"), in order to participate in the Bidding Process, each interested person or entity (a "Potential Bidder") must deliver (unless previously delivered) to Debtor and B. Riley Advisory Services ("Riley"):

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

1. An executed non-disclosure confidentiality agreement in a form acceptable to Debtors – such form will be provided to any Potential Bidder by Debtors or Riley;

2. Such form of financial disclosures, proof of funds, and credit-quality support or enhancement acceptable to Debtors and their Lenders; and

3. A preliminary (non-binding) proposal regarding: (a) specific assets and contractual or leasehold rights to be purchased or assigned; (b) the allocated purchase price(s) for the Assets; (c) any liabilities to be assumed; (d) any assets, liabilities and/or equity interests expected to be specifically excluded; (e) the structure and financing of the transaction (including, but not limited to, the source of financing for the purchase price).

Any information delivered to Debtors by any Potential Bidder shall be shared with the Lenders.

A Potential Bidder that delivers the documents described in subparagraphs (1) through (3) above and whose financial information demonstrates the financial capability of the Potential Bidder to consummate the sale, and that Debtors (in consultation with their Lenders) determines is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale within an acceptable time frame shall be deemed a "Preliminarily Qualified Bidder." Notwithstanding anything herein, Lenders shall be deemed a Preliminarily Qualified Bidder and a Qualified Bidder (as defined below) for purposes of any credit bid it may choose to make at any auction hereunder.

As promptly as practicable after a Potential Bidder delivers all of the materials required by subparagraphs (1) through (3) above, Debtors shall determine (in consultation with their Lenders) and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Preliminarily Qualified Bidder.

B. Due Diligence

Until the Bid Deadline (as defined below), Debtors shall afford each Preliminarily Qualified Bidder due diligence access to the Assets and Debtors' businesses. Due diligence access may include management presentations as may be scheduled by Debtors, access to data rooms, on-site inspections and such other matters that a Preliminarily Qualified Bidder may reasonably request. Requests for due diligence materials/inspections must be directed to the Riley team members identified below and Riley may, in their discretion, coordinate due diligence efforts such that multiple Preliminarily Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither Debtors nor any of their affiliates (or any of their respective representatives) shall be obligated to furnish any information relating to the Assets and Debtors' businesses to any Person other than to Preliminarily Qualified Bidders who make an acceptable preliminary proposal, but shall not withhold it from Lenders if requested.

C. Designation of Stalking Horse Bidder

Debtors may, but are not required, with the input of the Lenders, to select one or more stalking horse bidders (each, a "Stalking Horse Bidder") for the purpose of establishing a minimum acceptable bid for the some or all of the Assets with which to begin the bidding at the Auction (as defined below).

D. Bid Deadline

A Preliminarily Qualified Bidder that desires to make a bid shall deliver written and electronic copies of their bid and supporting information to:

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

| | |
|---|---|
| Patrick Turner<br>Turner Legal Group, LLC<br>139 S. 144th Street, Suite 665<br>Omaha, Nebraska 68010<br>pturner@turnerlegalomaha.com | Paul Heiman<br>Erickson Sederstrom P.C., L.L.O.<br>10330 Regency Parkway Dr. Ste. 100<br>Omaha, NE 68114<br>pheim@eslaw.com |
| Amy Wilcox-Burns<br>Operations Officer<br>122 N McKenna Ave, Gretna, NE 68028<br>amyburns@dimsrlvg.com | Richard B. Peil, CFA<br>B. Riley Advisory Services<br>2355 East Camelback Road, Suite 830<br>Phoenix, AZ 85016<br>Email: rpeil@brileyfin.com |

so as to be received not later than 5:00 p.m. (Central Standard Time) on **May 15, 2023** (the "Bid Deadline"). Only those Preliminarily Qualified Bidders who submit timely written bids will be entitled to bid at the Auction. Debtors shall, upon receipt of a bid, send copies of such bid to the Lender by electronic mail to the respective representatives of the Lender, as designated in writing by the Lender to Debtors.

   E.   Bid Requirements

All bids must be received by the Bid Deadline and include the following information and documents (the "Required Bid Materials"):

1. A letter stating: (a) that the Preliminarily Qualified Bidder offers to purchase some or all of the Assets and the allocated purchase price(s) proposed to be paid by the Preliminarily Qualified Bidder for the Assets (subject to paragraph (2) below); (b) that such bidder is prepared to enter into a legally binding purchase agreement; (c) that the bidder's offer is irrevocable until the Assets on which the Preliminarily Qualified Bidder is submitting a bid have been sold pursuant to the closing of the sale or sales approved by the Bankruptcy Court, unless such Preliminarily Qualified Bidder is deemed to have submitted the Successful Bid or the Back-up Bid (each as defined below) in accordance with these procedures, in which case such bidder's offer is irrevocable until two (2) business days after the closing of the Sale; (d) that such bid is unconditional (except as set forth in the Marked Agreement) and is not subject to any due diligence or financing contingency; and (e) setting forth any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals;

2. If no Stalking Horse Bidder is designated for the Assets, a duly executed copy of an asset purchase agreement. Any such asset purchase agreement submitted shall:

   a. specifically delineate which individual Asset, portion of the Debtors' Assets, or all of the Debtors' Assets (the "Property Schedule") the Preliminarily Qualified Bidder proposes to purchase;

   b. allocate the value the Preliminarily Qualified Bidder places on the property and fixtures delineated in the Property Schedule that is proposed to be purchased;

   c. identify each and every executory contract and unexpired lease that is to be assumed and assigned to the Preliminarily Qualified Bidder, and such list and the proposed amounts to cure

Case 22-80860-BSK    Doc 161    Filed 03/24/23    Entered 03/24/23 10:14:51    Desc Main
Document    Page 5 of 9

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

      any defaults under such executory contracts and unexpired leases shall be acceptable to the Debtors, in consultation with the Lenders;

    d. provide for the payment by such Preliminarily Qualified Bidder of all amounts necessary to cure any defaults under any executory contracts and unexpired leases that are to be assumed and assigned to such Potential Bidder;

    e. not contain any financing or due diligence contingencies to closing on the proposed Transaction;

    f. not contain any condition to closing of the Transaction on the receipt of any third-party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approvals, if any); and

    g. provide that the offer of the Potential Bidder is irrevocable through thirty (30) days after the entry of an Order approving any Sale and subject to the backup bidder provisions herein;

3. In the event Debtors enter into a purchase agreement with one or more Stalking Horse Bidders, the purchase price submitted by any Preliminarily Qualified Bidder must be equal to or greater than the sum of: (a) the purchase price set forth in such purchase agreement; and (b) a minimum overbid amount of not less than $25,000.00;

4. In the event one or more Stalking Horse Bidders is designated for the Assets, a duly executed copy of an asset purchase agreement substantially in the form of that agreed to with the Stalking Horse Bidder and a redline of the Preliminarily Qualified Bidder's proposed purchase agreement over that of the purchase agreement with the Stalking Horse Bidder (a "Marked Agreement");

5. In the event a one or more Stalking Horse Bidders is designated for the Assets after any Preliminary Qualified Bidder has submitted a bid in accordance with these Bidding Procedures, such Preliminary Qualified Bidder shall be notified of the selection of one or more Stalking Horse Bidders and given the opportunity, but shall not be required, to modify any submitted bid, provided such modified bid is received on or before the Bid Deadline;

6. Preliminarily Qualified Bidders must provide a commitment to close as soon as reasonably practicable following the entry of the order approving the Sale and shall provide that the proceeds of the Sale, to the extent of the Lenders' secured prepetition indebtedness and any post-petition indebtedness allowed by order of the Bankruptcy Court shall be paid directly to the Lender(s) and any remaining proceeds shall be paid to Debtors;

7. A deposit (a "Deposit") in the amount equal to 10% of the proposed purchase price in immediately available funds payable to Debtors, which shall be placed in a segregated account(s) of Debtors, not subject to the claims, liens, security interests or encumbrances of any party, except as specified herein. Deposits shall be returned to all Qualified Bidders (as defined below) other than the Successful Bidder(s) and the Back-up Bidder(s) within three (3) business days after entry of the order approving the Sale. If the sale of the Assets to the Successful Bidder closes, the Successful Bidder's Deposit shall be applied to the purchase price at closing in accordance with the purchase agreement between Debtors and such Successful Bidder, and, within three (3) business days after the closing of the Sale to the Successful Bidder, the Back-up Bidder's Deposit shall be returned. If a Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder and Debtors is not then in material breach of the purchase agreement, Debtors will

Case 22-80860-BSK    Doc 161    Filed 03/24/23    Entered 03/24/23 10:14:51    Desc Main
Document      Page 6 of 9

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

not have any obligation to return the Deposit deposited by such Successful Bidder and such Deposits will irrevocably become the property of Debtors and shall not be credited against the purchase price of the subsequent buyer (in addition to Debtors reserving all other rights and remedies against the Successful Bidder). In such instance, the Back-up Bidder's deposit shall be applied to the purchase price at closing of the Sale with the Back-up Bidder;

8. Written evidence of its available cash or a commitment for financing or other evidence of proposed purchaser's ability to consummate the proposed transaction;

9. A copy of a board resolution or similar document demonstrating authority to make such non-revocable bid, to execute the purchase agreement and to close a purchase of the Assets;

10. Full disclosure of the identity of each entity that will be bidding for the Assets or otherwise participating with such Bid, and the complete terms of any such participation; and

11. Any other items that Debtors or Riley may reasonably request.

A timely bid received from a Preliminarily Qualified Bidder that includes all of the Required Bid Materials is a "Qualified Bid" and such bidder is, as are the Lenders, a "Qualified Bidder". All Required Bid Materials received by Debtors shall be shared with Lender. **ANY BIDDER THAT FAILS TO COMPLY WITH THESE REQUIREMENTS, EXCEPT AS OTHERWISE PERMITTED BY THESE PROCEDURES, MAY NOT BE CONSIDERED A QUALIFIED BIDDER.**

Debtors reserve the right, in consultation with its Lenders, to determine the value of any Qualified Bid (either by itself or in connection with one or more other Qualified Bids or Debtors other restructuring alternatives), and which Qualified Bid constitutes the highest or best offer.

D. Right to Credit Bid

The Lenders may make one or more credit bids for some or all of the Assets securing their allowed claims to the fullest extent permitted by §363(k) of the Bankruptcy Code. The Lenders shall be permitted to credit bid all or a portion of their respective debts as part of their respective or collective credit bid at or prior to the Auction (defined below), subject to §363(k) of the Bankruptcy Code, and shall not be required to post a Deposit in any case. A credit bid by the Lender (as to any portion(s) of the Assets or all of the Assets) and all higher credit bids made by the Lenders during the Auction shall be deemed in all respects equal in value, and in its economic effect on Debtors' estates, to an all-cash bid in an amount equal to the face value of such credit bid on a dollar-for-dollar basis. Provided however that the total accepted credit bid(s) of the Lenders can never exceed the amount Lenders are respectively owed, plus any recoverable fees as of the auction date and any assessments of costs and expenses allowed by order of the Bankruptcy Court under 11 U.S.C §506(c).

Subject to §363(k) of the Bankruptcy Code, the Lenders may credit bid notwithstanding that a final order allowing such Lender's claims against Debtors may not be entered prior to the Auction. To the extent necessary, the Bankruptcy Court may estimate the amount of any Lenders' claim(s) pursuant to 11 U.S.C. §502(c) for purposes of determining the maximum amount of any Lenders' credit bid(s).

Other than as set forth in this section, notwithstanding anything contained in the Bidding Procedures to the contrary, nothing herein will in any way impair, alter or otherwise affect the right of the Lenders to "credit bid" pursuant to §363(k) of the Bankruptcy Code.

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

  E. "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Debtors, their agents or their estates, other than a warranty of title. By submitting a bid, each Preliminarily Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or as set forth in the purchase agreement of the Successful Bidder (defined below).

  F. Free and Clear of Any and All Interests

Except as otherwise provided in the Successful Bidder's purchase agreement, and subject to further order of this Court, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon other than any implied restrictive covenants that run with land (collectively, the "Interests") to the maximum extent permitted by §363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets, which proceeds shall be paid directly to the Lenders, to the extent of the Lenders' secured prepetition indebtedness and any post-petition indebtedness allowed by order of the Bankruptcy Court, and any remaining proceeds shall be paid to the Debtor. To the extent necessary, the Bankruptcy Court may estimate the amount of any Lenders' claim(s) pursuant to 11 U.S.C. §502(c) for purposes of determining what, if any, proceeds shall be paid to the Lenders.

  G. The Auction and Auction Procedures

Unless the Lender is the only Qualified Bidder, an auction (the "Auction") shall be conducted at a time and place to be identified and beginning at 10:00 a.m. (Central Standard Time) on **May 25, 2023**, or such other place and time as Debtors shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction, as set forth above.

Only: (i) Debtors and their respective advisors and attorneys; (ii) the Lenders and their respective advisors and attorneys: (iii), Qualified Bidders who have submitted Qualified Bids and their respective advisors and attorneys; (iv) the United States Trustee or his/her representatives, including Jerry L. Jensen as assistant U.S. Trustee for Nebraska, will be entitled to attend, participate and be heard at the Auction, and only Qualified Bidders will be entitled to make any subsequent overbids at the Auction. Each Qualifying Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

Debtors may, in consultation with the Lenders, permit a Qualified Bidder to bid by telephone, by video-conference, in person, or any combination thereof, provided that at least one representative or attorney for a Qualified Bidder is present at the Auction in person.

At the Auction, bidding will begin at the purchase price stated in the highest or otherwise best Qualified Bid for the particular asset being sold (the identity of which shall be announced by Debtors, in consultation with the Lenders, at the commencement of the Auction), and will subsequently continue in minimum increments to be determined at the discretion of Debtors. The bidding shall be continuous and competitive and shall not end until all bidders have submitted their last and best offers. Qualified Bidders will be permitted to increase their bids at the Auction, in accordance with the terms hereof, as many times as they wish. The Auction may, in

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

Debtors' discretion, include individual negotiations with the Qualified Bidders in private and/or in the presence of all other Qualified Bidders.

As soon as practicable after the conclusion of the Auction, Debtors shall, in consultation of the Lenders: (a) review each Qualified Bid on the basis of the financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (b) identify the highest or otherwise best offer(s) for the Assets (to the extent any such bid is acceptable to Debtors each a "Successful Bid" and each bidder making such bid, a "Successful Bidder") and the second highest and best offer for the purchase of the Assets (the "Back-up Bid" and the bidder making such bid, the "Back-up Bidder"); provided however, that the selection of a Successful Bid that is for less than the amount of any credit bid or bids offered by the Lenders or that could be offered by the Lender for the Assets or any portion thereof is subject to the Lenders' consent.

### H.   Acceptance of Qualified Bids

Debtors shall sell the Assets to any Successful Bidder only upon the approval of a Successful Bid by the Bankruptcy Court after the Sale Hearing. Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Debtors' acceptance of the bid. Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

Debtors, in consultation with the Lenders, may: (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of Debtors, their estates and creditors; provided, however, that Debtors shall not be deemed to have rejected any bid unless or until either the Sale closes and/or such bid is rejected in writing. Nothing herein contained shall constitute or convey "Party in Interest" status on the holder of a Qualified Bid for purposes of objecting to or contesting Debtors' selection of a Successful Bid or Back-Up Bid.

### I.   Sale Hearing

A hearing to approve the Sale (the "Sale Hearing") shall be set by the Bankruptcy Court by separate order. At the Sale Hearing, Debtors, in consultation with the Lenders, may present any Successful Bids to the Bankruptcy Court for approval or, in the event of any default by any such Successful Bidder, the Back-up Bid. Debtors reserve all rights not to submit any bid that is not acceptable to Debtors for approval to the Bankruptcy Court. Following the approval of the Sale of all or a portion of the Assets to any Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved Sale, Debtors shall be authorized, but not required, to deem the Back-up Bid (including a credit bid by the Lender), as disclosed at the Sale Hearing, the Successful Bid, and Debtors shall be authorized, but not required, to consummate the sale with the Back-up Bidder without further order of the Bankruptcy Court. Debtors, in the exercise of their business judgment, in consultation with the Lenders, reserve their rights to change the date of the Sale Hearing in order to achieve the maximum value for the Assets without notice other than by announcement of the adjournment at the Sale Hearing.

Objections, if any, to the Sale shall be filed on the docket of the Bankruptcy Court and shall be served such that each objection is actually received by Debtors, Lenders, Riley, and any other parties so ordered by the Bankruptcy Court on or before any date established by the Bankruptcy Court.

IN THE MATTER OF
Dimensions in Senior Living, LLC
Case No BK 22-80860
Order re Motion re Bidding Procedures

      J.    Modifications

If necessary to satisfy fiduciary duties, Debtors, in consultation with the Lender, may amend or supplement these Bidding Procedures at any time in any manner that is consistent with these Bidding Procedures and will best promote the goals of the Bidding Process, including extending or modifying the dates described herein and imposing other terms and conditions on Preliminarily Qualified Bidders and Qualified Bidders.

IT IS SO ORDERED.

Dated this 24th day of March, 2023.

    /s/Brian S. Kruse
    Hon. Brian Kruse
    United States Bankruptcy Judge

SUBMITTED BY:

TURNER LEGAL GROUP, LLC
Patrick Turner (NE Bar No. 23461)
139 S. 144th Street, Suite 665
Omaha, Nebraska 68010
Telephone: (402) 690-3675
pturner@turnerlegalomaha.com

Counsel for Debtors.

AGREED TO BY:

| | |
|---|---|
| Walentine O'Toole, LLP<br>Craig A. Knickrehm<br>Andrew R. Biehl<br>11240 Davenport Street<br>Omaha, NE 68154<br>(402) 330-6300<br>cknickrehm@walentineotoole.com<br>abiehl@walentineotoole.com<br><br>**Counsel for American National Bank** | STINSON, LLP<br>Nicholas J. Zluticky (MO 61203)<br>1201 Walnut St., Ste. 2900<br>Kansas City, MO 64106<br>Tel: (816) 691-3278<br>Fax: (816) 412-9388<br>Nicholas.zluticky@stinson.com<br><br>**Attorneys For Fannie Mae** |
| Cline Williams Wright Johnson<br>& Oldfather, L.L.P.<br>Michael J. Whaley, NE Bar No. 19390<br>12910 Pierce Street, Suite 200<br>Omaha, NE 68144<br>Telephone: (402) 397-1700<br>mwhaley@clinewilliams.com<br><br>**Attorneys for NEDCO** | |