## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re Dimensions In Senior Living, LLC et al.,[1] | ) | Case No. 22-80860 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Joint Administered |

## AMENDED DISCLOSURE STATEMENT IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION OF *HUMBOLDT ASSISTED LIVING, LLC*

COMES NOW, **Humboldt Assisted Living, LLC**, Debtor and Debtor-in-Possession in Case No. BK 22-80861 (Bankr. D. Neb. 2022) ("Humboldt"), pursuant to 11 U.S.C. §§ 105, 1125, and Fed. R Bank. P. ("Rule(s)") 3016, 3017, 3017.1, and Local R. Bank. P. ("Local Rule(s)") 3017-1, and in support of this amended disclosure statement (the "Disclosure Statement") to assist with the solicitation of acceptances of this Chapter 11 Plan of Liquidation (the "Plan"), Humboldt states as follows:

## ARTICLE I - INTRODUCTION TO THIS DISCLOSURE STATEMENT

Humboldt[2] is the proponent of the "*Debtor's Chapter 11 Plan of Reorganization*" (the "Plan"), which is included with this Disclosure Statement. The Plan sets forth the manner in which the Claims against, and Interests in, Humboldt will be treated in this Chapter 11 case. This Disclosure Statement describes certain aspects of the Plan, Humboldt's current and future business operations including, but not limited to, the proposed liquidation of Humboldt, and other related matters. Humboldt has promulgated this Disclosure Statement in accordance with Section 1125 of the Code for the purpose of soliciting acceptances of the above-referenced Plan from holders of impaired claims and equity interests. This Disclosure Statement has been compiled to incorporate "adequate information" to enable creditors and Equity Holders to make an informed judgment as to whether they should vote to accept or reject the Plan.

The Bankruptcy Court approved this Disclosure Statement on _____, as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the classes of claims and interests being solicited to make an informed judgment whether to vote to accept or reject the Plan.

---

[1] Dimensions In Senior Living, LLC, Tax I.D. No. 76-0771058, Village Ridge, LLC, Tax I.D. No. 20-3042744, Village Place, LLC, Tax I.D. No. 81-2042780, WB Real Estate Of Iola, LLC, Tax I.D. No. 46-5548614, Humboldt Assisted Living, LLC, Tax I.D. No. 48-1221950, Wilcox Properties Of Columbia, LLC, Tax I.D. No. 43-1934089, Wilcox Properties Of Fort Calhoun, LLC, Tax I.D. No. 20-5822304.

[2] Capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan. To the extent a particular term is not defined in the Plan, the terms used in this Disclosure Statement shall have the same meanings as those terms have in the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Code"), or as those terms have in the Federal Rules of Bankruptcy Procedure.

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

## ARTICLE II - DATE AND TIME OF HEARING ON CONFIRMATION OF THE PLAN

A Hearing on Confirmation of the Plan will be held before the Honorable Brian Kruse, United States Bankruptcy Judge, commencing at _____ as more set forth in the Notice of Hearing prepared by the Court served with this Disclosure Statement.

## ARTICLE III - (GENERAL DISCLAIMERS AND WARNINGS)

As noted above, this disclosure statement has been promulgated by Humboldt in an effort to solicit creditors and equity holders to vote to **accept** the plan.  The solicitation is a solicitation by Humboldt only.  It is not a solicitation by the attorneys or accountants for Humboldt and the representations made herein are only those of Humboldt and not of their attorneys or accountants.

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a certification that the factual information contained in this Disclosure Statement is accurate nor an endorsement of the Plan.

This Disclosure Statement is not the Plan.  This disclosure statement and the complete copy of the plan, which is attached, should both be read in their entirety.  For the convenience of creditors and equity holders, the Plan is summarized in this disclosure statement, but the Plan itself and not the plan summary is controlling in the event of any inconsistency between the two.

Unless another time is expressly specified in this Disclosure Statement, all statements contained in this document are made as of April 1, 2024.  Under no circumstances will the delivery of this Disclosure Statement or the exchange of any rights made in connection with the Plan create an implication or representation that there has been no subsequent change in the information included in this document.  Humboldt assumes no duty to update or supplement any of the information contained in this document, and it presently does not intend to undertake any such updates or supplements.

Certain materials contained in this Disclosure Statement are taken directly from other, readily accessible documents or are digests of documents.  While efforts have been made to convey accurately the contents of such documents, you are urged to examine the documents themselves and to use the descriptions of documents contained in this disclosure statement only after having conducted such an examination.

No representations or assurances concerning Humboldt, including, without limitation, her future business operations, the value of her properties, or the value of securities (if applicable) to be issued pursuant to the plan are authorized by Humboldt other than as set forth in this Disclosure Statement.  In arriving at your decision to accept or reject the Plan, you should not rely upon any representations or inducement made to secure your acceptance of the Plan other than those contained in this Disclosure Statement.  Such additional representations or inducements should be reported to counsel for Humboldt, who, in turn, shall deliver such information to the court for such action as may be appropriate.

Efforts have been made to prepare all unaudited financial statements which may be contained in this disclosure statement in accordance with generally accepted accounting principles.  However, as to all financial statements, Humboldt is unable to warrant or represent the accuracy of the information contained in those statements to be without error.

The financial information contained in this Disclosure Statement has not been subjected to an examination by independent, certified public accountants.  All creditors and equity holders are also urged to consult counsel regarding tax consequences of the Plan.

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

No representation regarding the effect of implementation of the plan on individual creditors or equity holders are made herein or otherwise. Humboldt does not express any opinion as to the tax consequences of the plan and in no event will Humboldt, her representatives, or the professional advisors she has engaged, be liable if, for any reason, the tax consequences of the Plan are not as anticipated by creditors and equity holders. Creditors and equity holders must look solely to and rely solely upon their own advisors as to the tax consequences of the Plan.

**If you are entitled to vote on the plan, you should do so**. Under the code, determining the outcome of balloting on the plan requires a calculation which considers the votes of those creditors and equity holders who actually voted on the Plan. Your rights may be affected even if you do not vote on the Plan. Your opportunity to have the outcome you desire will likely be enhanced if you vote. Nothing in this Disclosure Statement or the Plan limits Humboldt's right to object to any proofs of claim or interests filed in this case.

### ARTICLE IV - (DEADLINE FOR RECEIPT OF BALLOTS)

Instructions and explanations concerning voting on the Plan are set forth in subsequent sections of this disclosure statement. Please review those sections carefully and note that **all ballots must be received by _____, or they may not be counted**. As delays in the delivery of mail can occur, debtor urges you to mail or deliver your ballots as directed well in advance of the aforementioned deadline.

Voting on the Plan will affect your rights and the expenses incurred to administer this case. In particular, Humboldt may be able to reduce the additional attorneys' fees and costs that might be incurred to obtain confirmation of her plan if the plan is accepted by all classes of claims and interests created by the plan. Humboldt requests, therefore, that you vote to **accept** the plan if you are entitled to vote and that you take steps to ensure that your ballot is received in time to be counted.

### ARTICLE V - (CASTING BALLOTS)

**A.** **Who May Vote To Accept Or Reject The Plan**

Only creditors and equity interest holders whose claims and interests have been both allowed for purposes of voting and are "impaired" by the Plan are entitled to vote on the Plan. For a claim to be allowed for voting purposes, the claim must be listed in Humboldt's Chapter 11 Schedules **and must not be** listed as "disputed," "contingent" or "unliquidated."

If a claim is not listed or is listed as "disputed," "contingent," or "unliquidated", the holder of the claim must file a Proof of Claim on or before the bar date set by the Court (or Humboldt must file a Proof of Claim for that creditor as permitted by the Federal Rules of Bankruptcy Procedure) for that creditor to be entitled to vote. Moreover, no holder of a claim will be entitled to vote if any party in interest objects to that claim before balloting on the Plan or any Amended Plan occurs, unless the Court enters a specific order allowing the claim for voting purposes.

For an equity interest to be allowed, the equity interest holder's asserted interest must appear in Humboldt's Schedules, or the holder of the equity interest must file a proof of interest before the bar date set by the Court (or Humboldt must do so for the interest holder as permitted by the Federal Rules of Bankruptcy Procedure). In addition, no entity claiming to hold an equity interest may vote if any party in interest has objected to the allowance of the asserted interest prior to voting on the Plan or any Amended Plan, unless the Court enters an Order allowing the interest for voting purposes.

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

In addition to the foregoing criteria for voting eligibility, only creditors and equity interest holders whose claims or interests are "impaired" by the Plan (i.e., those whose claims or interests are altered or who will not receive the allowed amount of their claims in cash pursuant to the original terms of their agreements) are entitled to vote to accept or reject the Plan.  Holders of claims or interests which are not "impaired" are deemed to have accepted the Plan as a matter of law.

<u>Identification of Classes Impaired by the Plan</u>

Humboldt believes that only Class 1 and 3 created by the Plan is considered "impaired" pursuant to 11 U.S.C. §1124 and are therefore entitled to vote on the Plan.  Entities holding Administrative Claims, Priority Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.  Any party that disputes Humboldt's characterization of its Claim as unimpaired may request a finding of impairment from the Bankruptcy Court in order to obtain the right to vote.

If the claim or interest you hold has been classified in one of the impaired classes of claims or interests created by the Plan, it is important that you vote.  In addition, if you hold more than one claim or interest classified as "impaired" under the Plan, it is important that you vote with respect to **each** such claim or interest. IF YOU FAIL TO VOTE, YOUR RIGHTS MAY BE AFFECTED.  IF YOU FAIL TO VOTE FOR OR AGAINST THE PLAN YOUR CLAIM MAY NOT BE TAKEN INTO CONSIDERATION WHEN THE BANKRUPTCY COURT RULES ON CONFIRMATION OF THE PLAN.

**B.**     **<u>Voting Instructions.</u>**

After carefully reviewing this Disclosure Statement and its exhibits, vote to accept or reject the Plan on the enclosed ballot (or ballots) by signing and mailing or delivering it (or them) to the following address so that your ballot (or ballots) is (are) **<u>received by the bar date specified in Article IV</u>**.  As mail delays may occur, it is important that the ballot or ballots be mailed or delivered well in advance of the bar date specified. Ballots received after this date may not be counted.  Each creditor entitled to vote is to receive a ballot for each separately classified, impaired claim held.  Each equity interest holder entitled to vote is also to receive a ballot.

If you do not receive the required number of ballots with your copy of the Court-approved Disclosure Statement, notify attorneys for Humboldt immediately at the address noted above.  IT IS IMPORTANT THAT YOU CAST ALL BALLOTS WHICH YOU ARE ENTITLED TO CAST.

**C.**     **<u>The Results Of Balloting On The Plan Are Determined By Class.</u>**

In general, a class of claims accepts the Plan if the creditors who vote to accept the Plan hold at least two-thirds (2/3) in dollar amount and constitute more than one-half (1/2) in number of the allowed claims in the class **actually voting** on the Plan.  In general, a class of equity interests accepts the Plan if it is accepted by those who hold at least two-thirds (2/3) of the allowed interests in the class **actually for or against voting** on the Plan.

**D.**     **<u>Confirmation Based Upon Acceptance Of The Plan By All Impaired Classes.</u>**

If each class of impaired claims and interests accepts the Plan and the Plan is confirmed, the Plan will bind all holders of claims and interests, including those who did not vote and those who voted to reject the Plan.  The Plan may also be confirmed even if all impaired classes do not accept it, so long as the Plan is accepted by at least one class of impaired claims.  Confirmation over the objections of one or more classes of claims or interests is called "cramdown".

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

**E.**   **Confirmation Over The Objections Of One Or More Impaired Class.**

If the Plan is rejected by one or more impaired classes of claims or interests, the Plan or modification thereof may still be confirmed by the Court at the request of Humboldt.  To grant such a request, the Court must find, among other things, that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each rejecting, impaired class of claims or interests.  The phrases "discriminate unfairly" and "fair and equitable" are defined by Section 1129 of the Code and the case law interpreting that statute.  In other words, those phrases are "terms of art" denoting specific statutory criteria for confirmation which Humboldt's Plan must satisfy to be confirmed by the Court if any impaired class of claims or equity interests rejects the Plan.  The Plan does satisfy the statutory criteria required by Section 1129 of the Code, and Humboldt intends to request Confirmation of the Plan in the event it is rejected by any impaired class.

**F.**   **Consequences If The Plan Is Not Confirmed.**

If the Plan, or any modification thereof, is not accepted by one or more impaired classes of claims or interests or is not confirmed by the Court for other reasons, Humboldt may be forced to liquidate its assets in this Chapter 11 Case or, after conversion, under Chapter 7 of the Code.  Given that Humboldt's secured lenders hold valid and perfected liens against all of Humboldt's assets, liquidation of Humboldt's assets will likely yield no recovery for the unsecured creditors.  In addition, to the extent there did exist monies to be distributed to Humboldt's unsecured creditors, the various groups of creditors that have agreed to compromise their claims under the terms of the Plan will assert the full amount of those claims thus further diluting any *pro rata* distribution to each unsecured creditor.

## ARTICLE VI – (DEBTOR AND THE ESTATE)

**A.**   **Assets Of The Estate**

1. _Bankruptcy Schedules._  Other than the information provided in this Disclosure Statement, the assets owned by Humboldt on the Petition Date and Humboldt's estimate of the value of those assets at that time are described in Humboldt's Chapter 11 Schedules and Statement of Financial Affairs filed with the Clerk of the Bankruptcy Court and any subsequently filed Amendments thereto.  **Copies of Humboldt's Chapter 11 Schedules and Statement of Financial Affairs may be obtained from Humboldt by contacting Humboldt's counsel, Patrick R. Turner, at pturner@turnerlegalomaha.com.**

2. _Specific Real Properties:_  As noted in Humboldt's Schedules, Humboldt owns a facility in Humboldt, Kansas located at 615 Franklin Street, Humboldt, KS 66749.  Humboldt's schedules listed its real estate property as having an assessed value of $365,960.00.  Shortly after the Petition Date, American National Bank obtained a formal appraisal listing the value of Humboldt's real estate assets as approximately $1,200,000.00.

3. _Personal Property:_  As noted in Humboldt's Schedules, Humboldt owns various personal property located in the Humboldt facility.  As of the Petition Date, Humboldt's opinion reasoned opinion is that the Properties had an aggregate value of approximately $128,750.00.

4. _Cash on Hand:_  As of March 31, 2024, Humboldt possessed approximately $100,258.00 in cash on deposit, though these amounts remain subject to regular change.

5. _Tax Refunds:_  Humboldt has applied for tax credits under the Employee Retention Credit (ERC) – sometimes called the Employee Retention Tax Credit or ERTC.  The ERTC is a refundable tax credit for certain eligible businesses and tax-exempt organizations that had employees and were affected during the

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

COVID-19 pandemic.  Humboldt has submitted the necessary forms to claim and receive the credit, which is tentatively valued at $215,694.77, though this amount is subject to change and the fees or costs associated with obtaining the credit, including fees possibly payable to One Legal Advisory equal to 20% of the gross credit.

**B.** **Principal Creditors And Nature Of The Rights And Interests Held By Such Creditors**

**1.** **Secured Creditors**

Humboldt does not possess a traditional secured lender in the sense that Humboldt does not have structured secured debt.  However, Humboldt is a commercial guarantor for two affiliated companies: (i) WB Real Estate Of Iola, LLC (an entity also in Chapter 11 at Case No. 22-80864 in the District of Nebraska ("IOLA"); and (ii) Wilcox Properties of Fort Calhoun (an entity also in Chapter 11 at Case No. 22-80866 in the District of Nebraska ("Fort Calhoun").  American National Bank (the "Bank") is the primary lender for IOLA and Fort Calhoun.

ANB advanced funds to IOLA in the original amount of approximately $1,350,000.00.  The Bank filed a proof-of-claim in the IOLA chapter 11 case for $1,021,057.52.  Humboldt granted the Bank a mortgage on Humboldt's real estate holdings as additional collateral for the obligations owed by IOLA to the Bank.

ANB advanced funds to Fort Calhoun in the original amount of approximately: $2,000,000.00 in 2010; and $2,200,000.00 in 2013.  The Bank filed two proofs-of-claim in the Fort Calhoun chapter 11 case for $1,968,603.11.  Humboldt granted the Bank a mortgage on Humboldt's real estate holdings as additional collateral for the obligations owed by Fort Calhoun to the Bank.

**2.** **Priority Claims**

Humboldt's schedules and proofs of claims filed to date indicate priority claims of approximately $0.00.

**3.** **General Unsecured Claims.**

Humboldt's schedules and proofs of claims filed to date indicate unsecured claims of approximately $72,675.11.  Of this amount, approximately $67,484.75 is a contingent, unliquidated claims owed to the US DHHS and arising from Humboldt's receipt of HHS Provider Relief Funds.  However, the amounts due to the US DHHS have been forgiven and need not  be repaid.

**D.** **Description Of Humboldt's Business, And The Events Precipitating The Filing Of Humboldt's Bankruptcy.**

Humboldt has operated a retirement home facility in Humboldt, Kansas many years.  In addition, one of Humboldt's affiliated companies, Wilcox Properties of Columbia, LLC ("Columbia") operated a similar facility in Columbia, Missouri.  However, in 2022, the State of Missouri informed Columbia that it would not renew Columbia's operating license unless substantial improvements were made to Columbia's former facility to comply with current building code requirements, requirements that had historically been grandfathered-in from compliance.  Columbia was without cash reserves to pay for these substantial updates and was forced to close its facility and relocate its residents.  In addition, two of Humboldt's affiliated companies, Village Ridge, LLC and Village Place, LLC, had legal judgments issues against them in excess of $500,000.00.  Columbia, Village Ridge, LLC and Village Place, LLC, are also banked at American National Bank.  These instant cases were filed (along with 6 other related cases) to prevent the loan defaults associated with Columbia, Village

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

Ridge, LLC and Village Place, LLC, from causing a loan default of Humboldt's obligations to American National Bank.

**Humboldt has filed monthly operating reports throughout this bankruptcy case. Because of the length thereof, Humboldt's operating reports are not included in this Disclosure Statement. Detailed reports of Humboldt's post-petition business operations are available through the Bankruptcy Court's CM/ECF online docketing system (https://ecf.neb.uscourts.gov/) in case No. 22-80860. In addition, copies of the operating reports may be obtained from Humboldt by contacting Humboldt's counsel, Patrick R. Turner, at pturner@turnerlegalomaha.com.**

## ARTICLE VII - (ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES)

In accordance with 11 U.S.C. § 365, Humboldt intends to assume any and all of its executory contracts and unexpired leases. Humboldt shall have until the Effective Date of the Plan to file an application to assume or reject any executory contract that has not been previously assumed or rejected. To the extent Humboldt fails to obtain approval to assume any executor contract it shall be deemed to be rejected as of the Effective Date. Humboldt will obtain from the Court a bar date by which any person or entity claiming to have been injured by such rejection must file a proof of claim for any alleged damages resulting therefrom. Any person who has fails to file a proof of claim prior to that bar date is forever barred from asserting any such claim against Humboldt, Bankruptcy Estate and/or Humboldt and will receive nothing under this Plan.

## ARTICLE VIII - (SUMMARY OF MATERIAL PLAN PROVISIONS)

This part of the Disclosure Statement summarizes the provisions of the Plan. The Plan, after it has been confirmed, will constitute a contract between Humboldt and its creditors and stockholders. This Disclosure Statement does not constitute such a contract. Therefore, if any discrepancies exist between the Plan and the following summary of the Plan, the Plan will control. It is, thus, advisable, as mentioned above, to review the Plan carefully for the full details of the treatment of creditors and Equity Holders. Creditors and equity holders are urged to read the plan in full. creditors and equity holders are further urged to consult with their own legal counsel to obtain a complete understanding of the plan.

**A.**     **Objective Of The Reorganization**

Humboldt believes the reorganizational structure described above will provide the highest feasible rate of return to all creditors and parties in interest which can be realistically achieved under current bankruptcy law. Conversely, as set forth in more detail below, if Humboldt's assets were liquidated in a case under Chapter 7, the creditors holding Allowed Unsecured Claims and Allowed Interests would receive nothing, because all Humboldt's non-exempt assets are encumbered by secured claims.

**B.**     **Summary**

The Plan is furnished with this Disclosure Statement as **Exhibit** "2". Humboldt urges all creditors and interest holders to review carefully the specific terms of the Plan. The Plan will govern any discrepancies between the plan and this disclosure statement.

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

## C.   Management Of Humboldt

Humboldt will continue to operate what remains of Humboldt's operations for the purpose of collecting, liquidation, and distributing any remaining assets.  The manager of Humboldt will continue to be Dimensions in Senior Living, LLC.

## D.   Definition And Treatment Of Claims

   1.   Overview of Classification and Impairment of Claims and Interests

The Bankruptcy Code requires that a Chapter 11 plan divide the different claims against, and equity interests in, a debtor into separate classes based upon their legal nature.  Claims of a substantially similar legal nature are usually classified together, as are equity interests of a substantially similar legal nature.

The Bankruptcy Code does not require the classification of certain claims, and thus they are typically denominated as "unclassified claims".  Unclassified claims include all claims for allowed administrative expenses, which include the fees and costs incurred by Humboldt's bankruptcy counsel in representing Humboldt in this Case, and the fees and costs earned by Humboldt's various special counsel in representing Humboldt in matters related to this Case, such as on-going litigation. The unclassified claims also include allowed claims for certain taxes entitled to priority under 11 U.S.C. §§ 507(a)(1) and (a)(8) of the Code.  The holder of each such claim is entitled to receive specific treatment under Humboldt's Plan (i.e., payment in cash of the allowed amount of the claim), regardless of whether holders of claims having similar priority choose to accept different treatment (e.g., deferred cash payments over time).

Under Bankruptcy Code Section 1124, a class of claims is "impaired" unless the plan (i) leaves unaltered the legal, equitable, and contractual rights of the holders of claims in the class; or (ii) cures all defaults (other than those arising from Humboldt's insolvency, the commencement of the case, or nonperformance of a non-monetary obligation) that occurred before or after the commencement of the case, reinstates the maturity of the claims in the class, compensates the holder for their actual damages incurred as a result of their reasonable reliance on any acceleration rights, and does not otherwise alter their legal, equitable, and contractual rights.  Except for any right to accelerate Humboldt's obligations, the holder of an unimpaired claim will be placed in the position it would have been if the case had not been commenced.

A Chapter 11 plan must designate each separate class of claims and equity interests either as "impaired" (affected by the plan) or "unimpaired" (unaffected by the plan).  If a class of claims is "impaired", under the Bankruptcy Code the holders of claims in that class are entitled to vote on the plan (unless the plan provided for no distribution to the class, in which case the class is deemed to reject the plan), and to the right to receive, under the plan, property with a value at least equal to the value that the holder would receive if Humboldt were liquidated under Chapter 7 of the Bankruptcy Code.  If a class of claims is unimpaired, the holders of claims in that class are deemed to accept the plan.

In this Case, Claims and Interests are classified into the following classes under the Plan:

| Class | # of Creditors | Estimated Claims | Estimated Payment |
|---|---|---|---|
| Administrative Expense Claims | 1-2 | $40,000-$60,000.00 | 100% |
| Priority Tax Claims | 0 | $0.00 | 100% |
| Priority Claims | 0 | $0.00 | 100% |

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

| Class | Description | Impaired | Voting status | Estimated Payment |
|---|---|---|---|---|
| Class 1 | American National Bank | Yes | Entitled To Vote | 100% |
| Class 2 | General Unsecured Claims | No | Not Entitled to Vote | 100% |
| Class 3 | Equity Security Interest Holders | Yes | Entitled to Vote | 100% |

    2.    <u>Classification and Treatment of Claims and Interests Under the Plan</u>

The treatment of Claims and Interest in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding an Allowed Claim or an Allowed Interest may have in or against Humboldt, the Estate, Humboldt or their respective property.  This treatment supersedes and replaces any agreements or rights those entities may have in or against Humboldt, the Estate, Humboldt, or their respective property.  All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

    a)  *Unclassified Claims* – Under the Plan, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims, as of the Effective Date of the Plan constitute unclassified claims and shall be treated as set forth below:

    i)  <u>Allowed Administrative Claims and Allowed Priority Claims</u> - The holders of Allowed Priority Claims and Allowed Administrative Claims against Humboldt (excluding claims described in 11 U.S.C. § 507(a)(8)) shall be paid in cash, in full, within five (5) business days of the Effective Date or upon the expiration of the appeal period for the order allowing such claims claim, whichever is later, or at such other times as may be mutually agreed upon by Humboldt and such claimants.

    ii)  <u>Allowed Priority Tax Claims</u> - Each holder of an Allowed Priority Tax Claim shall receive on account of such claim, based on the sole discretion of Humboldt, either (a) a cash payment in the full amount of the Priority Tax Claim on the Effective Date or upon the expiration of the appeal period of the order allowing such claim, whichever is later; or (b) deferred payments during a period not exceeding five (5) years after the date of the Order for Relief equal to the allowed amount of such claim, which payments shall include interest on the allowed claim at the appropriate statutory rate.

    b)  *Classified Claims* - Under the Plan, Allowed Secured Claims, Allowed Unsecured Claims, Interests, any Allowed Claims subordinated under §§ 509(c), 510(b), or 510(c), and any Interest in Humboldt or any Interest or Claim held by Humboldt's Equity Holders constitute classified claims which are placed into the classes identified in the table above.

The above-described classes are treated under the Plan as follows:

***Class 1***:  This Class shall consist of the Secured Claim of American National Bank ("ANB").  The Secured Claim of ANB is secured by a first position, prepetition Lien on Humboldt's prepetition real estate assets.

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

The Secured Claim of ANB shall be treated as follows:

i) **Amount.**    ANB has noted filed a proof of claim in this case.  ANB possesses a contingent, unliquidated claim against Humboldt.  For purpose of this Plan, the amount owed to ANB by Humboldt is $0.00.

ii) **Security.**    The Secured Claim of ANB shall continue to be secured by the same real and personal property that secured it on the Petition Date and with the same priority it had on the Petition Date in relationship to the Claim of other Creditors, if any, asserting Secured Claim against any or all of the same assets.  Nothing herein shall constitute a release of or otherwise impact any liability of any guarantor of the debt relating to the Secured Claim of ANB.

iii) **Payments and Term.**

    a.  Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Humboldt and ANB, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the ANB Loan Documents (as defined below) shall be deemed cured by this Plan and the same be reinstated on the Effective Date.  Any amounts owed to ANB as a result of Loan Documents shall be paid in accordance with the Chapter 11 Plans of Reorganization of IOLA and Fort Calhoun.

iv) **Payment of Insurance and Taxes**.  Humboldt shall continue to real estate taxes and property insurance as called for in the ANB Loan Documents.

v) **ANB Loan Documents.**    The following ANB Loan Documents, except as modified in herein, shall remain in full force and effect.

    a.  Mortgage dated August 13, 2013, and filed for record on August 2013, as instrument number 2013-1334 in the office of the Allen County, Kansas Register of Deeds, as modified on February 4, 2015, which secured up to $100,000.00 of the obligations Fort Calhoun owes to ANB;

    b.  Mortgage dated December 29, 2014, and filed for record on January 5, 2015, as instrument number 2015-0013 in the office of the Allen County, Kansas Register of Deeds, as modified on February 10, 2015, which secured up to $480,000.00 of the obligations IOLA owes to ANB;

    c.  Assignment of Rents dated January 7, 2010, and filed for record on January 22, 2010, as instrument number 2010-0118 in the office of the Allen County, Kansas Register of Deeds;

    d.  Assignment of Rents dated January 7, 2010, and filed for record on January 22, 2010, as instrument number 2010-0118 in the office of the Allen County, Kansas Register of Deeds;

    e.  Hazardous Substances Certificate and Indemnity Agreement as set forth in instrument 2010-0019 filed in the office of the Allen County, Kansas Register of Deeds;

    f.  Assignment of Rents dated December 29, 2014, and filed for record on January 5, 2015, as instrument number 2015-0014 in the office of the Allen County, Kansas Register of Deeds; and

    g.  Hazardous Substances Certificate and Indemnity Agreement as set forth in instrument 2015-0015 filed in the office of the Allen County, Kansas Register of Deeds.

vi) **Default.**  Upon any default by the Humboldt of obligations owed to ANB under this Plan, ANB

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

shall give notice to the Humboldt of default and thereafter the Humboldt shall have thirty (30) days from the date of the notice to cure the default, or such other default and cure period in the ANB Loan Documents, whichever is longer. If Humboldt fails to cure the default within said Cure Period, ANB shall be entitled to relief from the Plan, any automatic stay, or any confirmation order and be entitled to enforce all rights and remedies available by law or in equity without further notice or hearing.

_Class 2_: This Class shall consist of the holders of Allowed Unsecured Claims not entitled to priority under the Code. Each holder of an Allowed Claim in Class 2 will be paid in full plus interest at the federal judgment rate in 6 equal installments beginning on the 1st day of the calendar month following the Effective Date. Notwithstanding any other provision of this Plan, Humboldt shall have the option to repay the amounts due to Class 2 creditors at any time.

_Class 3_: Holders of Equity Security Interests in Humboldt shall retain their Interests in Humboldt.

3.    Amounts of Claims and Interests

Because certain of the Claims and Interests treated under the Plan are in unknown or undetermined amounts, the amounts of Claims and Interests specified in the Plan reflect only Humboldt's best estimate as of the date hereof.

4.    Disputed Classified Claims

Disputed Classified Claims: Humboldt or Humboldt and their attorneys may file on or before sixty (60) days from the Effective Date of the Plan (a) an objection to any claim, (b) a motion to determine the extent, priority, or amount of any secured or other claim, or (c) a complaint to determine the validity, priority or extent of any lien or other interest in property of Humboldt's Estate.

## F.    **MEANS OF IMPLEMENTING THE PLAN**

1.    **General Treatment.** Classes One through Two will be paid from the revenue derived from Humboldt's post-petition income and operations derived from its facility in Humboldt, Kansas. Payments made to the holders of Allowed Class 1 and Class 2 Claims shall be paid directly from Humboldt.

2.    **Assumption of Executory Contracts and Unexpired Leases.** All of Debtor's executory contracts and unexpired leases, shall be assumed under this Plan pursuant to 11 U.S.C. §365.

3.    **Distributions.** Subject to the Bankruptcy Rules, all distributions made or required, under the Plan, shall be made: (i) if a proof of claim is filed in respect to a particular Claim, to the holder of such Allowed Claim at the address of such holder set forth in the relevant proof of claim, as such address may have been updated pursuant to the Bankruptcy Rule 2002(g); or (ii) if no proof of claim is filed in respect to a particular Claim, to the holder of such Allowed Claim at the address set forth in the relevant Humboldt's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). However, if Humboldt is notified in writing, no later than ten (10) Business Days after the Effective Date, of a change of address that provides an address different from that specified in (i) or (ii) above, then the distribution shall be made at the address contained in the written notification. Nothing contained in the Plan will require Humboldt to attempt to locate any holder of an Allowed Claim.

4.    **Resolution of Disputed Claims**. Humboldt shall file and serve a copy of each Objection upon the holder of the relevant Claim as soon as practicable, but in no event later than (i) 90 days after the Effective

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

Date, or (ii) such other time as may be fixed or extended by the order of the Bankruptcy Court.  After the Effective Date, Humboldt may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  No distribution or payment shall be made on account of a Disputed Claim unless, and until, such Disputed Claim becomes an Allowed Claim.

5.  **Estimation of Disputed Claims**.  Humboldt may at any time request that the Bankruptcy Court estimate any such Disputed Claim subject to estimation under §502(c) of the Bankruptcy Code and for which Humboldt may be liable under this Plan, including any Disputed Claim for taxes, to the extent permitted by §502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim; and the Bankruptcy Court may retain jurisdiction to estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code at any time during litigation concerning any objection to the Claim or Interest.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount will constitute (at the option of Humboldt to be exercised at the commencement of the estimation proceeding) either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court.

6.  **Unclaimed or Undeliverable Distributions**.  Any distributions under the Plan with respect to an Allowed Claim that are unclaimed or undeliverable for a period of sixty (60) days after the applicable distribution date thereof shall be classified as "Unclaimed Property."  Any distributions made under the Plan that become Unclaimed Property shall be returned to Humboldt for disbursement in accordance with the terms of this Plan.

7.  **Ordinary Course of Business.**  Nothing herein or the Confirmation Order shall in any way limit Humboldt's ability to operate in the ordinary course of business, or to take any steps reasonably necessary, in Humboldt's business judgment, to protect and maintain the financial stability of Humboldt's business operation, or the health, wellbeing, or condition of Humboldt's assets, whether existing now or in the future.

8.  **Further Authorizations.**  Humboldt, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, the Plan.

9.  **Transfer Taxes.** The issuance, transfer, or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to or in connection with the Plan, or the making or delivery of an instrument of transfer under or in connection with the Plan shall not, pursuant to §1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

10. **Recordable Order.** Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

11. **Effectuating Documents and Further Transactions.**  Humboldt shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## G.  GENERAL PROVISIONS CONCERNING THE CONSEQUENCES OF CONFIRMATION

1.  _Post-confirmation Business Operations_.  After the Effective Date, Humboldt will continue to manage the business affairs of Humboldt without supervision by the Bankruptcy Court, and may enter into

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

agreements to transfer, convey, encumber, use and lease any and all of its remaining assets or assets acquired hereafter.

2.      Ownership of Humboldt's Assets.  As of the Effective Date of the Plan, Humboldt shall be vested with ownership of all property of Humboldt's Chapter 11 Estate, as defined in 11 U.S.C. §541, and as provided for in the Plan.  Upon such transfer, Humboldt shall own all such property free and clear of all liens, claims and interests of any person or entity, except as specifically provided in the Plan or the Order Confirming the Plan.

3.      Continuation and Termination of Security Interests.  Unless otherwise provided in the Plan or in the order confirming the Plan, all creditors possessing Allowed Secured Claims shall retain their Liens on any of the assets of Humboldt to secure payment of all cash or other property to be distributed to them pursuant to the terms of the Plan.  Such Liens on Humboldt's assets shall be deemed relinquished and reconveyed to Humboldt upon the payment to the holders of such Liens of all money, property or securities due them in satisfaction of their Allowed, Secured Claims pursuant to the terms of the Plan.

Moreover, once any Lien is deemed relinquished and reconveyed to Humboldt pursuant to the terms of the Plan, the creditor who had claimed such Lien shall immediately deliver to Humboldt all documents, properly signed and notarized, needed to document the release of the lien according to any applicable state or federal law.  If the required documentation is not supplied **within one (1) week** after demand therefor has been made, Humboldt may act as the attorney in fact for that creditor, as set forth above, to execute and record such documents on behalf of that creditor or seek an order from the Bankruptcy Court enforcing the lien release provisions of the Plan or entry of an order declaring the lien to be released or void.

4.      Retained Right to Enforce Causes of Action.  Nothing contained in this Disclosure Statement or the Plan shall prevent Humboldt from enforcing any causes of action it may possess prior to Confirmation of the Plan or Humboldt from enforcing any cause of action, including any avoidance actions that may exist by operation of 11 U.S.C. §§ 542 through 551, and it acquires as the result of Confirmation of the Plan.

5.      Insurance.  Humboldt shall maintain insurance on its tangible personal and real property in an amount not less than the fair market value of that property and shall keep its property in good repair, reasonable wear and tear excepted.

6.      Satisfaction of Claims and Interests.  All classes of allowed claims and allowed interests shall receive the distributions set forth herein on account of and in complete satisfaction of those allowed claims and interests.  Without limiting the foregoing, upon the Effective Date of the Plan, each holder (and each successor of a holder) of an Allowed Claim or an Allowed Interest shall be deemed to have waived, relinquished and released any and all of its rights and claims against Humboldt and Humboldt, except as provided in the Plan or the Order Confirming the Plan.

7.      Binding Nature of the Plan.  Upon the entry of the Order Confirming the Plan, the Plan shall bind Humboldt, Humboldt, all entities that are to acquire any property under the Plan, all creditors, and all equity security holders, whether or not their claims and interests are impaired under the Plan and whether or not they have accepted the Plan, as determined by § 1141(a) of the Bankruptcy Code._This means, in part, that, except as provided by an express order of the Bankruptcy Court or pursuant to the terms of the Plan or the Order Confirming the Plan, all judicial, administrative or other actions or proceedings pending against Humboldt or arising out of claims accrued prior to the confirmation of the Plan shall be permanently enjoined.

8.      Termination of the Automatic Stay and Discharge.  The automatic stay imposed by 11 U.S.C. § 362(a) shall terminate when the Order Confirming the Plan becomes non-appealable.  Pursuant to Section

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

1141(a) of the Bankruptcy Code, the entry of the Order Confirming the Plan shall permanently bar the filing and asserting of any claims against Humboldt and Humboldt which arose or relate to the period of time prior to the date of entry of that order, except as provided in the Plan or the Order Confirming the Plan.

## ARTICLE IX - (FINANCIAL INFORMATION)

**Exhibit 1** to this Disclosure Statement provides financial projections for Humboldt. Among other things, the projections show financial information on a yearly basis for the first year of the Plan. The projections have been prepared by or under the direction of Humboldt and Amy Wilcox-Burns using Generally Accepted Accounting Principles relying on accrual accounting. The underlying information and assumptions are derived from Humboldt's historical operations, books and records, and current operations.

The projections are based upon a variety of estimates and assumptions, which though considered reasonable at the time they were prepared, may not be realized and are inherently subject to significant business, economic, competitive uncertainties and contingencies, many of which are beyond Humboldt's control. Thus, Humboldt cautions that no representations can be made as to the accuracy of the projections or Humboldt's ability to achieve the projected results. The projections may not be relied upon as a guarantee or other assurance of the actual results that will occur. (*See* Article X for additional information related to the risk factors associated with the projections).

## ARTICLE X - (RISKS FACTORS TO BE CONSIDERED IN VOTING TO ACCEPT THE PLAN)

### A.    GENERAL FACTORS AFFECTING THE REORGANIZED DEBTOR

Humboldt's ability to perform its obligations under the plan is subject to various factors and contingencies, some of which are described in this section. The following discussion summarizes only certain material risks associated with the Plan and is not exhaustive. Moreover, this section should be read in connection with the other disclosures contained in the Plan and this Disclosure Statement. Each holder of a Claim and/or Interest, in conjunction with its advisors, should supplement the following discussion by analyzing and evaluating the Plan and this Disclosure Statement as a whole.

1.    Competition.    The commercial real estate industry is highly competitive. Humboldt will undoubtedly encounter competition from other businesses attempting to exploit the same markets. While Humboldt intends to be as competitive as possible, because the competitive environment often is affected by factors beyond the control of any particular property business, Humboldt can provide no assurance that its ongoing business will be successful or that future losses will not result.

2.    General Economic Conditions.    Humboldt will be exposed to risks related to a continued slowdown in the national and global economies, which can be due to many factors, including concerns about inflation and reduced corporate profits and capital spending. Continuing concern exists regarding the national real estate market. If economic conditions worsen, Humboldt's financial condition, and result of operations may be materially and adversely affected.

## ARTICLE XI - (TAX CONSEQUENCES)

Humboldt is not aware of any federal tax consequences of the Plan to Humboldt in this case. However, to liquidate some or all of its assets, Humboldt may realize, income, capital gains, cancellation of debts, or other tax obligations from the liquidation of assets and the pursuit of causes of action. Humboldt has not obtained a tax opinion at this time and therefore expresses no opinion as to the tax consequences of confirmation or implementation of the Plan to the holder of any Claim or Interest. BECAUSE NO

-14-

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

PROPONENT OF THE PLAN EXPRESSES ANY OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN, IN NO EVENT WILL DEBTOR, ITS PRINCIPALS OR ITS PROFESSIONAL ADVISORS, BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN ARE NOT AS ANTICIPATED BY CREDITORS AND EQUITY HOLDERS.  DEBTOR'S CREDITORS AND EQUITY HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THE PLAN.

In addition, Humboldt is not aware of any federal tax consequences of the plan to creditors who receive a distribution under the Plan.  However, such distributions may be taxable under applicable state or federal law.  BECAUSE NO PROPONENT OF THE PLAN EXPRESSES ANY OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN, IN NO EVENT WILL DEBTOR, ITS PRINCIPALS OR ITS PROFESSIONAL ADVISORS, BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN ARE NOT AS ANTICIPATED BY CREDITORS AND EQUITY HOLDERS.  DEBTOR'S CREDITORS AND EQUITY HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THE PLAN.

## ARTICLE XII - (IMPLEMENTATION OF THE PLAN)

The Plan will be implemented, in part, as follows:

1.   On the Effective Date, Humboldt shall continue to operate in the ordinary course of business.

2.   The members or managers shall oversee implementation of the Plan and be fully empowered to act for the estate to implement the Plan.

3.   The assets of Humboldt prior to the time of confirmation shall be all of the assets set forth in the Schedules and any assets acquired by Humboldt after the Petition Date.

4.   The members or managers of Humboldt shall take the necessary actions to prosecute any and all claims, causes of action and objections to Proofs of Claim or Proofs of Interest as determined to be appropriate and in the best interest of Humboldt and the persons holding Allowed Claims.

5.   The membership agreements of Humboldt shall be deemed to be amended in every way necessary to comply with and effectuate the terms and conditions of the Plan.

6.   The members or managers of Humboldt shall have all of the powers granted by Nebraska law, and any other applicable state or federal laws.

7.   The members or managers of Humboldt shall have the power to amend the Membership Agreements in any manner necessary to carry out the provisions of the Plan. The members or managers shall be entitled to use and exercise all pertinent provisions of state and federal law.

## ARTICLE XIII - (ALTERNATIVES TO THE PLAN)

Section 1129(a)(7) of the Bankruptcy Code provides:

(7)  With respect to each impaired class of claims or interests—
(A)  each holder of a claim or interest of such class—
(i)  has accepted the plan; or

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

(ii)   will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if Humboldt were liquidated under chapter 7 of this title…

This statute is colloquially called the 'best interest of creditors test'.  In short, this test provides that a debtor's bankruptcy plan must pay to creditors at least what they would be paid if all Humboldt's assets were liquidated and distributed in accordance with the bankruptcy code.  Irrespective of whether or not each holder of claim in any class accepts the Plan, each holder of any claim shall receive 100% of their Allowed Claim under the Plan and, as such, no separate liquidation analysis is needed.

## ARTICLE XIV - (MODIFICATION OF AND AMENDMENTS TO THE PLAN)

Prior to the entry of the Order Confirming the Plan, Humboldt may propose amendments or modifications in accordance with 11 U.S.C. §1127(a).  After confirmation, Humboldt may amend the Plan in the manner provided by Section 1127(b) of the Bankruptcy Code.

The Bankruptcy Court may, at any time, so long as it does not materially or adversely affect the interests of creditors and equity interest holders, remedy defects and omissions or reconcile any inconsistencies herein or in the Order Confirming the Plan as may be appropriate to effectuate the Plan.

## ARTICLE XV - (REMEDIES FOR DEFAULTS BY THE REORGANIZED DEBTOR)

If Humboldt fails to comply with the terms hereof, the holders of Allowed Claims or Allowed Interests in any class materially harmed thereby may proceed against Humboldt and its property to enforce the Plan, taking any action permissible under federal or state law, in any court of competent jurisdiction.  With respect to holders of liens on Humboldt's property, such creditors may act in accordance with any applicable and existing mortgage, deed of trust, security agreement, or other instrument evidencing a lien or encumbrance on their collateral.

## ARTICLE XVI - (RETENTION OF BANKRUPTCY COURT JURISDICTION)

Following confirmation of the Plan, the Bankruptcy Court shall retain, without limitation, jurisdiction to ensure that the purposes and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court will retain jurisdiction, until the Plan is fully consummated, for the following purposes:

1.   Deciding the proper classification of any claim, determining the proper allowance subordination and liquidation for purposes of distribution of claims estimated for purposes of voting, and resolving objections to claims and Interests, and the reexamination of Allowed Claims for purposes of determining acceptances at the time of Confirmation, and the determination of such objections as may be filed.  The failure by Humboldt to object to or to examine any Claim for the purpose of determining Plan acceptance, shall not be deemed to be a waiver of any right to object to or reexamine any Claim in whole or in part;

2.   Resolving all disputes regarding title to assets of Humboldt and all disputes arising under the Bankruptcy Code and to determine all questions and disputes regarding assets of the Estate and all assets of Humboldt existing as of the date of the Final Confirmation Order, to conduct any sales of assets of the Estate and assets of Humboldt existing as of the date of the Final Confirmation Order, and all causes of action, controversies, disputes, or conflicts, known or unknown, whether or not subject to action pending as of the Confirmation Date, between a Humboldt and any other party, including but not limited to, such Humboldt's right to recover assets, avoid transfers, recover fraudulent transfers, offset claims, recover money or property

-16-

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

from any party or return assets which were or are the property of the Estate or asset of Humboldt existing as of the date of the Final Confirmation Order pursuant to the provisions of the Bankruptcy Code;

3.   Hearing all matters and deciding all issues regarding the prosecution by Humboldt or Humboldt of any Complaints or causes of action and preference claims against any person and adjudicate all claims, controversies, contested matters or adversary proceedings arising out of any purchases, sales, agreements or obligations made or undertaken by and between a Humboldt and any third party during the pendency of the Reorganization Case and such jurisdiction shall continue after the closing of this case;

4.   Correcting of any defect, curing any omission, or reconciling any inconsistency between the Plan and the Order Confirming the Plan as may be appropriate to effectuate the purposes and intent of the Plan;

5.   Modifying the Plan after confirmation;

6.   Enforcing and interpreting the terms and conditions of the Plan, any securities issued under the Plan, or any other documentation effectuating the Plan and all controversies and disputes that may arise in connection with the enforcement, interpretation or consummation of the Plan;

7.   Resolve any claims or causes of action, including any avoidance actions arising by operation of U.S.C. §§ 542 through 551, against any creditors or equity security holders held by Humboldt, Humboldt or any creditors of Humboldt;

8.   Entering any order required to enforce the rights and powers of Humboldt;

9.   Determining any claim entitled to priority under Section 507 of the Bankruptcy Code;

10.  Entering any order required to close Humboldt's case;

11.  Determining all matters relating to the assumption, assignment, or rejection of executory contracts and unexpired leases, including claims for damages from the rejection of any executory contract or unexpired lease within such time as the Bankruptcy Court may direct;

12.  The Bankruptcy Court may liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent, disputed, or unliquidated Claims;

13.  The Court may shorten or extend, for cause, the time fixed for doing any act or thing under the Plan, on such notice as the Bankruptcy Court shall determine to be appropriate;

14.  The Court may enter any order, including injunctions, necessary to enforce the title, rights, and powers of Humboldt, and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem appropriate; and

15.  The Court may determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE XVII - (RECOMMENDATION AND CONCLUSION)

Humboldt believes that Plan confirmation and implementation are preferable to any feasible alternative because the Plan will provide entities holding Claims and Interests with substantially greater recoveries than the alternatives. **Accordingly, Humboldt urges entities who hold impaired Claims or Interests to vote to**

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

**ACCEPT the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots to Humboldt as directed in the Plan and Disclosure Statement.**

Respectfully submitted.

**Dimensions In Senior Living, LLC, et al., Debtors.**

By:   /s/ *Patrick R. Turner*
      TURNER LEGAL GROUP, LLC
      Patrick Turner (NE Bar No. 23461)
      139 S. 144th Street, Suite 665
      Omaha, Nebraska 68010
      Telephone: (402) 690-3675
      pturner@turnerlegalomaha.com

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

## EXHIBIT 1 FINANCIAL PROJECTIONS

## Arrowood Lane
## Budget 2024

### Revenue

| | Account Number | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rent Income | 6100 | 26,515.00 | 27,145.00 | 28,060.45 | 29,470.45 | 29,470.45 | 29,470.45 | 29,470.45 | 29,470.45 | 29,470.45 | 29,470.45 | 29,470.45 | 29,470.45 | 346,954.50 |
| Second Person | 6101 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Meals | 6102 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Level of Care Income | 6103 | 1,550.00 | 1,550.00 | 1,550.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 21,750.00 |
| Guest Room | 6104 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Garage | 6105 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Telephone | 6106 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Medicaid/HCBS | 6107 | 25,080.00 | 27,360.00 | 29,640.00 | 31,920.00 | 31,920.00 | 31,920.00 | 31,920.00 | 31,920.00 | 31,920.00 | 31,920.00 | 31,920.00 | 31,920.00 | 369,360.00 |
| Storage | 6108 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tray Service | 6109 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Furniture Rental | 6110 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Missed Meal Credit | 6111 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Extra Nursing | 6112 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Laundry | 6113 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Forfeited Deposit | 6145 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Beauty Shop | 6935 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Resident Supplies | 6940 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Miscellaneous Income | 6995 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Interest Income | 6996 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Revenue** | | 53,145.00 | 56,055.00 | 59,250.45 | 63,290.45 | 63,290.45 | 63,290.45 | 63,290.45 | 63,290.45 | 63,290.45 | 63,290.45 | 63,290.45 | 63,290.45 | 738,064.50 |

### Expenses

#### Administrative Expense

| | Account Number | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Executive Director Labor | 9100 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | 2,696.79 | $32,361.47 |
| Office Labor | 9101 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | $15,600.00 |
| Marketing Labor | 9102 | - | - | - | - | - | - | - | - | - | - | - | - | $0.00 |
| Night Manager Labor | 9105 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Marketing and Advertising | 9110 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| License and Dues | 9130 | 1,450.00 | - | - | - | - | - | - | 1,000.00 | - | - | - | - | 2,450.00 |
| Management Fees | 9134 | 3,188.70 | 3,363.30 | 3,555.03 | 3,797.43 | 3,797.43 | 3,797.43 | 3,797.43 | 3,797.43 | 3,797.43 | 3,797.43 | 3,797.43 | 3,797.43 | 44,283.87 |
| Printing and Postage | 9138 | 63.00 | - | 63.00 | - | - | 63.00 | - | 63.00 | - | 63.00 | - | 63.00 | 378.00 |
| Newsletter Printing and Postage | 9139 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | 9140 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| Repair/Equipment-Administrative | 9142 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Service Contracts - Office | 9148 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Supplies - Office | 9152 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,800.00 |
| Telephone | 9160 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 9,480.00 |
| Travel | 9162 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bank Charges | 9190 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 30.00 | 360.00 |
| **Total** | | 10,968.49 | 9,630.09 | 9,884.82 | 10,064.22 | 10,127.22 | 10,064.22 | 10,127.22 | 11,064.22 | 10,127.22 | 10,064.22 | 10,127.22 | 10,064.22 | 122,313.34 |

#### General Expense

| | Account Number | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Employee Benefits - Insurance/IRA | 9220 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 |
| Employee Benefits - Other | 9221 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Employee Benefits - Seminar/Ed. | 9222 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll Expense | 9225 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,800.00 |
| Medicaid/HCBS Billing | 9240 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 900.00 |
| Employee Advertising/Recruitment | 9250 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Payroll Taxes | 9257 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 3,219.58 | 38,634.90 |
| Workers Comp Expense | 9266 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Workers Comp Insurance | 9268 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 |
| **Total** | | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 4,244.58 | 50,934.90 |

## Expenses

| | Account Number | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Dietary Expense** | | | | | | | | | | | | | | |
| Dietary Supervisor Labor | 9300 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | 3,064.53 | $36,774.40 |
| Cook Labor | 9301 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | 2,429.09 | $29,149.12 |
| Dietary Aide Labor | 9302 | - | - | - | - | - | - | - | - | - | - | - | - | $0.00 |
| Dietary Consultant | 9316 | - | 175.00 | - | - | 175.00 | - | - | 175.00 | - | - | 175.00 | - | 700.00 |
| Food | 9322 | 3,596.00 | 3,451.00 | 4,045.50 | 4,132.50 | 4,495.00 | 4,350.00 | 4,495.00 | 4,495.00 | 4,350.00 | 4,495.00 | 4,350.00 | 4,495.00 | 50,750.00 |
| Repairs/Equipment Dietary | 9342 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Service Contracts-Dietary | 9348 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 181.00 | 2,172.00 |
| Dietary Supplies | 9352 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 380.00 | 4,560.00 |
| **Total** | | 9,650.63 | 9,680.63 | 10,100.13 | 10,187.13 | 10,724.63 | 10,404.63 | 10,549.63 | 10,724.63 | 10,404.63 | 10,549.63 | 10,579.63 | 10,549.63 | 124,105.52 |
| | | | | | | | | | | | | | | |
| **Housekeeping/Laundry Expense** | | | | | | | | | | | | | | |
| Housekeeping Labor | 9400 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | 1,081.60 | $12,979.20 |
| Laundry Labor | 9401 | - | - | - | - | - | - | - | - | - | - | - | - | $0.00 |
| Repairs/Equipment Housekeeping | 9442 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Repairs/Equipment Laundry | 9443 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Service Contracts-Housekeeping/Laundry | 9448 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Linens | 9450 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Housekeeping Supplies | 9452 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 |
| Laundry Supplies | 9453 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| **Total** | | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 1,381.60 | 16,579.20 |
| | | | | | | | | | | | | | | |
| **Nursing Expense** | | | | | | | | | | | | | | |
| Director of Healthcare Labor | 9600 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | 2,704.00 | $32,448.00 |
| RN Labor | 9601 | - | - | - | - | - | - | - | - | - | - | - | - | $0.00 |
| Medication Aide Labor | 9603 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | 11,830.00 | $141,960.00 |
| Nurse Aide Labor | 9604 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | 4,295.60 | $51,547.25 |
| Consultant - Pharmacist | 9616 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Pharmacy non-chargeable | 9641 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 50.00 | 600.00 |
| Repair/Equipment Nursing | 9642 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Service Contracts-Nursing | 9648 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 153.00 | 1,836.00 |
| Resident Supplies Billable | 9650 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Supplies - Nursing | 9652 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 1,800.00 |
| **Total** | | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 19,282.60 | 231,391.25 |
| | | | | | | | | | | | | | | |
| **Maintenance Expense** | | | | | | | | | | | | | | |
| Maintenance Labor | 9700 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | 1,532.27 | $18,387.20 |
| Auto Expense & Gas | 9714 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Insurance Property/Auto | 9725 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 2,520.00 | 30,240.00 |
| Repairs | 9742 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 |
| Rent Equipment | 9744 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Service Contracts-Maintenance | 9748 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 445.00 | 5,340.00 |
| Supplies - Maintenance | 9752 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 |
| Utilities | 9764 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 42,000.00 |
| Cable TV | 9765 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 8,400.00 |
| **Total** | | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 9,397.27 | 112,767.20 |

**Expenses**

| | Account Number | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Life Enrichment Expense** | | | | | | | | | | | | | | |
| Life Enrichment Labor | 9800 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $15,142.40 |
| Driver Labor | 9801 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $0.00 |
| Resident Benefits | 9846 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Supplies - Life Enrichment | 9852 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Entertainment - Life Enrichment | 9853 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Holiday Expense | 9860 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total** | | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | $ 1,261.87 | 15,142.40 |
| **Total Variable Expenses** | | $ 56,187.03 | $ 54,878.63 | $ 55,552.86 | $ 55,819.26 | $ 56,419.76 | $ 56,036.76 | $ 56,244.76 | $ 57,356.76 | $ 56,099.76 | $ 56,181.76 | $ 56,274.76 | $ 56,181.76 | 673,233.82 |
| | | | | | | | | | | | | | | |
| **Fixed Expense** | | | | | | | | | | | | | | |
| Amortization | 9912 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Depreciation | 9918 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Interest - Mortgage | 9926 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Interest - Other | 9928 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Lease - Auto/Other | 9948 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | $ 730.00 | 8,760.00 |
| Lease - Building | 9950 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Real Estate /Personal Property Taxes | 9958 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | $ 1,000.88 | 12,010.56 |
| **Total Fixed Costs** | | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | $ 1,730.88 | 20,770.56 |
| | | | | | | | | | | | | | | |
| **Total Expenses** | | $ 57,917.91 | $ 56,609.51 | $ 57,283.74 | $ 57,550.14 | $ 58,150.64 | $ 57,767.64 | $ 57,975.64 | $ 59,087.64 | $ 57,830.64 | $ 57,912.64 | $ 58,005.64 | $ 57,912.64 | 694,004.38 |
| **Net Income (Loss)** | | $ (4,772.91) | $ (554.51) | $ 1,966.71 | $ 5,740.31 | $ 5,139.81 | $ 5,522.81 | $ 5,314.81 | $ 4,202.81 | $ 5,459.81 | $ 5,377.81 | $ 5,284.81 | $ 5,377.81 | 44,060.12 |
| **Less:** | | | | | | | | | | | | | | |
| **Debt Service** | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Plan Payment to Class 2** | | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | $ 432.53 | 5,190.36 |
| **Cash Flow** | | $ (4,772.91) | $ (554.51) | $ 1,966.71 | $ 5,740.31 | $ 5,139.81 | $ 5,522.81 | $ 5,314.81 | $ 4,202.81 | $ 5,459.81 | $ 5,377.81 | $ 5,284.81 | $ 5,377.81 | 44,060.12 |
| **# of Units Occupied** | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **% Occupied** | | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% | |

1:14 PM
04/26/24
Accrual Basis

Case 22-80860-BSK    Doc 425    Filed 07/10/24    Entered 07/10/24 10:16:33    Desc Main
Document    Page 23 of 42

Humboldt Assisted Living, LLC
Profit & Loss
March 2023 through March 2024

|  | Mar '23 - Mar 24 |
|---|---|
| **Income** | |
| **INCOME** | |
| **6100 · Room Income** | 368,872.16 |
| **6101 · Second Person** | 2,076.63 |
| **6103 · Level Of Care** | 22,626.69 |
| **6107 · Medicaid/HCBS** | 299,101.91 |
| **6990 · Miscellaneous Income** | 35,060.23 |
| **6999 · Interest Income** | 2.05 |
| **Total INCOME** | 727,739.67 |
| **Total Income** | 727,739.67 |
| **Expense** | |
| **ADMINISTRATIVE EXPENSE** | |
| **9100 · Executive Director Labor** | 33,041.18 |
| **9101 · Office Labor** | 9,008.00 |
| **9130 · License & Dues** | 2,634.20 |
| **9134 · Management Fees** | 40,534.90 |
| **9138 · Printing & Postage** | 192.33 |
| **9140 · Professional Fees** | 16,773.65 |
| **9142 · Repair/Equipment-Administrative** | 532.14 |
| **9148 · Service Contracts-Office** | 3,341.25 |
| **9152 · Supplies** | 1,203.88 |
| **9160 · Telephone** | 11,009.06 |
| **9162 · Travel** | 253.88 |
| **9190 · Bank Charges** | 370.90 |
| **Total ADMINISTRATIVE EXPENSE** | 118,895.37 |
| **GENERAL EXPENSES** | |
| **9220 · Employee Benefits-Insur/IRA** | 1,348.28 |
| **9221 · Employee Benefits-Other** | 619.02 |
| **9225 · Payroll Expenses** | 1,903.83 |
| **9240 · HCBS/Medicaid Billing** | 602.27 |
| **9250 · Employee Advertising-Recruitmen** | 483.97 |
| **9257 · Payroll Taxes** | 27,006.42 |
| **9259 · Sales/Consumers Tax** | 57.33 |
| **9268 · Workman's Comp Insurance** | 4,871.19 |
| **Total GENERAL EXPENSES** | 36,892.31 |
| **DIETARY** | |
| **9300 · Dietary Supervisor Labor** | 51,717.32 |
| **9301 · Cook Labor** | 21,582.89 |
| **9316 · Dietary Consultant** | 706.57 |
| **9322 · Food** | 44,399.17 |
| **9342 · Repairs/Equipment** | 172.49 |
| **9348 · Service Contracts-Dietary** | 1,929.71 |
| **9352 · Dietary Supplies** | 5,434.64 |

1:14 PM
04/26/24
Accrual Basis

Case 22-80860-BSK    Doc 425    Filed 07/10/24    Entered 07/10/24 10:16:33    Desc Main
Humboldt Assisted Living, LLC
Document      Page 24 of 42
Profit & Loss
March 2023 through March 2024

|  | Mar '23 - Mar 24 |
|---|---|
| **Total DIETARY** | 125,942.79 |
| **HOUSEKEEPING/LAUNDRY** | |
| 9400 · Housekeepping Labor | 990.84 |
| 9452 · Housekeeping Supplies | 982.39 |
| 9453 · Laundry Supplies | 110.15 |
| **Total HOUSEKEEPING/LAUNDRY** | 2,083.38 |
| **NURSING** | |
| 9600 · Director of Healthcare Labor | 9,009.45 |
| 9601 · RN Labor | 432.00 |
| 9602 · Wage - LPN | 48.00 |
| 9603 · Medication Aide Labor | 103,421.05 |
| 9604 · Nurse Aide Labor | 83,428.03 |
| 9616 · Consultant - Pharmacist | 1,200.00 |
| 9641 · Pharmacy-Non Chargable | 340.93 |
| 9642 · Repairs/Equipment-Nursing | 143.72 |
| 9648 · Service Contracts- Nursing | 1,854.00 |
| 9652 · Supplies -Nursing | 339.91 |
| **Total NURSING** | 200,217.09 |
| **MAINTENANCE** | |
| 9700 · Maintenance Labor | 15,191.93 |
| 9714 · Auto Expense | 1,452.42 |
| 9725 · Insurance - Property/Auto | 32,421.88 |
| 9742 · Repairs & Maintenance | 5,257.35 |
| 9748 · Service Contracts-Maintenance | 8,706.61 |
| 9752 · Supplies-Maintenance | 2,346.52 |
| 9764 · Utilities | 39,421.10 |
| 9765 · Cable TV | 8,890.15 |
| **Total MAINTENANCE** | 113,687.96 |
| **LIFE ENRICHMENT** | |
| 9860 · Holiday Expense | 500.00 |
| **Total LIFE ENRICHMENT** | 500.00 |
| **FIXED COSTS** | |
| 9928 · Interest Other | 964.40 |
| 9948 · Lease Expense-Auto/Other | 8,760.00 |
| 9950 · Lease Expense | 730.00 |
| 9958 · Real Estate/Personal Prop Taxes | 12,725.45 |
| **Total FIXED COSTS** | 23,179.85 |
| **Total Expense** | 621,398.75 |
| **Net Income** | **106,340.92** |

IN THE MATTER OF
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Amended Disclosure Statement

<u>EXHIBIT 2 PLAN</u>

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re Dimensions In Senior Living, LLC et al.,[1] | ) | Case No. 22-80860 |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Joint Administered |

## CHAPTER 11 PLAN OF REORGANIZATON OF HUMBOLDT ASSISTED LIVING, LLC

COMES NOW, Humboldt Assisted Living, LLC, Debtor and Debtor-in-Possession in Case No. BK 22-80861 (Bankr. D. Neb. 2022), hereinafter referred to as "Debtor" proposes the following Chapter 11 Plan of Reorganization (the "Plan").

## ARTICLE I
## (DEFINITIONS)

**A.    DEFINED TERMS**

Subject to the qualifications contained in Article I, Paragraph B below, the following terms are defined as follows whenever they appear as capitalized terms and are used in this Plan and Debtor's Disclosure Statement, if applicable.  For purposes of the Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.  Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.    "Administrative Claim" shall mean a Claim to the extent allocated to such Debtor for costs and expenses of administration pursuant to section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code and claims entitled to priority under sections 364, 365(d)(3) and 507(b) of the Bankruptcy Code, and includes:  (i) actual and necessary costs and expenses incurred by the Debtor after the Petition Date with respect to preserving the Estates and operating the Debtor's business; (ii) any Professional Fee Claims approved by the Bankruptcy Court under section 330 of the Bankruptcy Code that are incurred on or before the Confirmation Date; and (iii) all fees and charges properly assessed against the Estates under 28 U.S.C. § 1930.

2.    "Allowed Amount" shall mean the amount of any Allowed Claim recognized by Debtor as valid or allowed by a Final Order of this Court.

3.    "Allowed Claim" or "Allowed…Claim" or "Allowed Interest" shall mean a Claim or Interest having the following characteristics:

---

[1] Dimensions In Senior Living, LLC, Tax I.D. No. 76-0771058, Village Ridge, LLC, Tax I.D. No. 20-3042744, Village Place, LLC, Tax I.D. No. 81-2042780, WB Real Estate Of Iola, LLC, Tax I.D. No. 46-5548614, Humboldt Assisted Living, LLC, Tax I.D. No. 48-1221950, Wilcox Properties Of Columbia, LLC, Tax I.D. No. 43-1934089, Wilcox Properties Of Fort Calhoun, LLC, Tax I.D. No. 20-5822304.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

       a)  Either such Claim or Interest was listed in the Chapter 11 Schedules of Debtor filed with the United States Bankruptcy Court for the District of Nebraska (hereafter, the "Court") pursuant to §521 of the Code; and (1) such Claim or Interest was not identified in those schedules as "disputed", "contingent" or "unliquidated"; or (2) proof of such Claim or Interest has been filed with the Court in the time and in the manner prescribed by the Court, the Code and the Federal Rules of Bankruptcy Procedure; and

       b)  No objection to the allowance of such Claim or Interest has been interposed within the periods of limitation fixed by the Court, the Code or the Federal Rules of Bankruptcy Procedure or any order resolving any objection to the allowance of such Claim or Interest has become a Final Order.

    4.  "Avoidance Action" shall mean a claim or cause of action, and the proceeds thereof, against Persons arising under sections 502(d), 542, 544, 545, 547 through 551, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer and fraudulent conveyance laws, whether or not litigation is commenced before or after the Effective Date to prosecute such Avoidance Action.

    5.  "Ballot" shall mean each of the forms that will be distributed with the Plan to holders of Claims and holders of Interests in Classes that are impaired under the Plan and entitled to vote in connection with the solicitation of acceptances of the Plan.

    6.  "Bankruptcy Code" or "Code" shall mean the federal statutes commonly referred to as the "Bankruptcy Code" and which are set forth in Title 11 of the United States Code (11 U.S.C. § 101, *et seq.*).

    7.  "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Nebraska or the United States District Court, District of Nebraska, if and when a district judge is acting as a trial judge and not an appellate judge in this Case.

    8.  "Bankruptcy Schedules" shall mean the official schedules of assets and liabilities and statement of financial affairs filed by Debtor in this case.

    9.  "Business Day" shall mean Monday through Friday, except for state and federal holidays.

    10.  "Case" shall mean the Chapter 11 bankruptcy case of Debtor, pending in the United States Bankruptcy Court for the District of Nebraska as Case No. BK 22-80861.

    11.  "Cash" shall mean legal tender of the United States of America and equivalents thereof.

    12.  "Causes of Action" shall mean all claims and causes of action of the Debtor and its Estate as of the Effective Date, whether arising under any contract, tort, the Bankruptcy Code, or other federal or state law, including, but not limited to, Avoidance Actions, Insurance Claim Litigations, all litigation pending in any jurisdiction in which any of the Debtor is a plaintiff, together with all products and proceeds thereof.

    13.  "Causes of Action Recoveries" shall mean the proceeds recovered from Causes of Action, less the cost of collection thereof; provided, however, that Cause of Action Recoveries shall not include Insurance Claim Recoveries.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

14. "Claim" shall mean a "claim," as defined by §101(5) of the Code, against Debtor, against property of Debtor or against property of the Estate.

15. "Class" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to this Plan.

16. "Confirmation" shall mean the signing, by a United States Bankruptcy Judge or United States District Judge acting as a trial judge and not as an appellate judge, of all orders necessary to confirm the Plan.

17. "Confirmation Order" shall mean the order (or orders) confirming the Plan, signed by a United States Bankruptcy Judge or United States District Judge, acting as a trial judge and not as an appellate judge, after entry of such order (or orders) on the court's docket.

18. "Creditor" shall mean any entity holding a Claim.

19. "Cure Amount" shall mean the amount necessary to cure any payment arrearages with respect to any executory contracts and leases to be assumed by Debtor.

20. "Disputed Claim" or "Disputed Interest" shall mean, at any time, that portion of a Claim asserted against Debtor that is: (i) the subject of an objection interposed by Debtor or other party in interest in the Chapter 11 Case, if prior to the first hearing on the Confirmation Order such objection remains unresolved; or (ii) prior to the time that an objection has been or may be timely filed, in excess of the amount of the Claim scheduled by Debtor as other than disputed, contingent or unliquidated; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to §502(c) of the Bankruptcy Code.  In the event there is a dispute as to classification of a Claim, it shall be considered a Disputed Claim in its entirety. The portion of a Claim that is not disputed by Debtor shall be deemed to be an Allowed Claim.

21. "Effective Date" shall mean that date which is fourteen (14) days following the date of all orders necessary for confirmation of the Plan to become Final Orders.

22. "Estate" shall mean the estate created in Debtor's Case under §541 of the Bankruptcy Code.

23. "Equity Holder" shall mean any holder of an Interest.

24. "Executory Contract" shall mean a contract or lease to which Debtor is a party that is subject to assumption or rejection under sections 365 or  1123 of the Bankruptcy Code.

25. "Federal Rules of Bankruptcy Procedure" shall mean those rules of procedure governing bankruptcy cases and contested matters and adversary proceedings in those cases which have been promulgated pursuant to 28 U.S.C. § 2075, and any amendments to those rules applicable to this Case.

26. "Final Order" shall mean an order or judgment entered on the Court's official docket and which: (a) has sufficient finality under applicable law to be appealable as of right; (b) has been entered on the court's docket for a sufficient period of time such that the filing of any notice of appeal from it is subject to being dismissed as commencing an untimely appeal; (c) has not been reversed; (d) is not stayed; (e) is not the subject of a pending motion seeking relief from it, reconsideration of it, or to alter or amend it; and (f) is not the subject of a pending appeal or a pending motion for review or rehearing on appeal.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

27. "<u>Interest</u>" shall mean the interests, whether or not asserted, of any holder of an equity security of Debtor on the Petition Date, as defined in §101(17) of the Bankruptcy Code.

28. "<u>Lien</u>" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

29. "<u>Person</u>" shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

30. "<u>Petition</u>" shall mean the petition for relief under Chapter 11 of Title 11, United States Code filed by Debtor on November 21, 2022.

31. "<u>Petition Date</u>" shall mean the date upon which Debtor filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code.

32. "<u>Plan</u>" shall mean this Chapter 11 Plan of Reorganization, including all exhibits to this Plan, either in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Code and the Federal Rules of Bankruptcy Procedure.

33. "<u>Priority Claim</u>" shall mean a Claim entitled to priority against the Estate under §507(a), except for those Claims arising under §507(a)(8). Priority Claims do not include any Claims incurred after the Petition Date.

34. "<u>Unsecured Claim</u>" means a Claim not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim under section 507 of the Bankruptcy Cod

35. "<u>Priority Tax Claim</u>" shall mean a Claim entitled to priority against the Estate under §507(a)(8). Priority Tax Claims do not include any Claims incurred after the Petition Date.

36. "<u>Pro Rata</u>" shall mean, as of any date of determination, with respect to the share of any Allowed Claim within any Class of Claims, the proportion ("Z") that the Face Amount of such Allowed Claim in a particular Class of Claims ("X") bears to the aggregate Face Amount of all Allowed Claims (including Disputed Claims) in such Class ("Y") represented by the mathematical algorithm of: $X \div Y = Z$.

37. "<u>Professional Fee Claim</u>" shall mean a Claim of a Professional Person for compensation for services rendered in these Cases prior to the Effective Date under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code, for such Professional Person.

38. "<u>Professional</u>" or "<u>Professional Persons</u>" shall mean Persons, including attorneys, accountants and financial advisors retained by the Debtor, the Committee or the Creditor Trustee, or to be compensated under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

39. "<u>Reorganized Debtor</u>" shall mean Debtor, as reorganized, which shall continue to own the property interests of Debtor on the Effective Date and having the rights, powers, duties and interests granted to the "Reorganized Debtor" under the Plan and the Bankruptcy Code.

40. "<u>Schedules</u>" shall mean Debtor's Chapter 11 Schedules and Statement of Financial Affairs filed with the Clerk of the Bankruptcy Court in this Case and any subsequently filed amendments thereto.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

41. "Secured Claim" means a Claim secured by a lien on property of the Estates, or a Claim subject to set off under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estates, or to the extent of the amount subject to set off, as the case may be.

42. "Secured Creditor" shall mean the holder of a Secured Claim.

43. "Security Interest" shall have the meaning set forth in section 101(51) of the Bankruptcy Code.

44. "Tax" shall mean: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state or local taxing authority or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

45. "Tax Refund" shall mean any right, title, or interest held by Debtor to any claim for a refund or credit of any Tax, including any rights to any employ retention tax credits.

46. "Tax Refund Proceeds" shall mean the proceeds recovered from any Tax Refund, less the cost of collection thereof.

47. "Unsecured Claim" means a Claim not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim under section 507 of the Bankruptcy Code.

48. "Unsecured Creditor" shall mean any holder of an Allowed Unsecured Claim.

**B.    RULES OF CONSTRUCTION**

1.   The rules of construction set forth in §102 of the Bankruptcy Code apply to this Plan.

2.   Bankruptcy Rule 9006(a) applies when computing any time period under this Plan.

3.   For the purpose of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined in Article I, Paragraph A above, shall have the meanings assigned to them under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

4.   The definition given to any term or provision in this Plan shall supersede and control any different definition that may be given to such terms or provisions in Debtor's Disclosure Statement, if applicable.

5.   Whenever the context requires, terms contained and defined herein shall include the plural and the singular number.  The masculine gender as used in the Plan shall, unless the context otherwise requires, include the feminine gender, and the feminine gender shall likewise include the masculine.

6.   Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

7.    Unless otherwise indicated, the phrase "under the Plan", "hereunder", "herein", "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.  Unless otherwise specified, all references to "Articles" or "Paragraphs" are references to this Plan's Articles or Paragraphs.

## ARTICLE II
### (DEFINITION AND TREATMENT OF CLAIMS)

### A.    SUMMARY OF CLASSIFICATION OF CLAIMS AND INTERESTS

| CLASS | DESCRIPTION | IMPAIRED | VOTING STATUS |
|---|---|---|---|
| N/A | Allowed Administrative Claims, other than claims under the DIP Financing, Priority Claims, and Priority Tax Claims | N/A | Not Entitled to Vote |
| Class 1 | American National Bank | YES | Entitled to Vote |
| Class 2 | Allowed Unsecured Claims | NO | Not Entitled to Vote |
| Class 3 | Equity Security Interest Holders | YES | Entitled to Vote |

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM, AND NO DISTRIBUTION WILL BE MADE ON ANY CLAIM SUBORDINATED TO OTHER CLAIMS PURSUANT TO AN ORDER OF THE COURT, EXCEPT AS MAY BE CONSISTENT WITH SUCH SUBORDINATION.**

### B.    AMOUNTS OF CLAIMS AND INTERESTS

Because certain of the Claims and Interests treated under this Plan are in unknown or undetermined amounts, the amounts of Claims and Interests specified in the Plan reflect only Debtor's best estimate as of the date hereof.

1.    Classification and Treatment of Claims and Interests Under the Plan

The treatment of Claims and Interest in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding an Allowed Claim or an Allowed Interest may have in or against Debtor, the Estate, the Reorganized Debtor or their respective property.  This treatment supersedes and replaces any agreements or rights those entities may have in or against Debtor, the Estate, the Reorganized Debtor, or their respective property.  All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

    a) *Unclassified Claims* – Under the Plan, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims, as of the Effective Date of the Plan constitute unclassified claims and shall be treated as set forth below:

    (i) <u>Allowed Administrative Claims and Allowed Priority Claims and Allowed Priority Tax Claims</u> - The holders of Allowed Priority Claims and Allowed Administrative Claims against Debtor (excluding claims described in 11 U.S.C. § 507(a)(8)) shall be paid in cash, in full, within five (5) business days of the Effective Date or upon the expiration of the appeal period for the order allowing such claims claim, whichever is later, or at such other times as may be mutually agreed upon by Debtor and such claimants.

    b) *Classified Claims* - Under the Plan, Allowed Secured Claims, Allowed Unsecured Claims, Interests, any Allowed Claims subordinated under §§509(c), 510(b), or 510(c), and any Interest in Debtor or any Interest or Claim held by Debtor's Equity Holders constitute classified claims which are placed into the respective classes in the table set forth above.

    This Class shall consist of the Secured Claim of American National Bank ("ANB"). The Secured Claim of ANB is secured by a first position, prepetition Lien on Humboldt's prepetition real estate assets.

    <u>*Class 1*</u>: This Class shall consist of a Secured Claim of American National Bank ("ANB"). The Class 1 Claim of ANB is secured by a first position, prepetition Lien on Debtor's prepetition Assets. The Class 1 Claim of ANB shall be treated as follows:

i) **Amount.** ANB has noted filed a proof of claim in this case. ANB possesses a contingent, unliquidated claim against Debtor based on corporate guarantees. For purposes of this Plan, the amount owed to ANB by Debtor is $0.00.

ii) **Security.** The Secured Claim of ANB shall continue to be secured by the same real and personal property that secured it on the Petition Date and with the same priority it had on the Petition Date in relationship to the Claim of other Creditors, if any, asserting Secured Claim against any or all of the same assets. Nothing herein shall constitute a release of or otherwise impact any liability of any guarantor of the debt relating to the Secured Claim of ANB.

iii) **Payments and Term.**

    a. Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Humboldt and ANB, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the ANB Loan Documents (as defined below) shall be deemed cured by this Plan and the same be reinstated on the Effective Date. Any amounts owed to ANB as a result of Loan Documents shall be paid in accordance with the Chapter 11 Plans of Reorganization of IOLA and Fort Calhoun.

iv) **Payment of Insurance and Taxes**. Debtor shall continue to real estate taxes and property insurance as called for in the ANB Loan Documents.

v) **ANB Loan Documents.** The following ANB Loan Documents, except as modified in herein, shall remain in full force and effect.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

a. Mortgage dated August 13, 2013, and filed for record on August 2013, as instrument number 2013-1334 in the office of the Allen County, Kansas Register of Deeds, as modified on February 4, 2015, which secured up to $100,000.00 of the obligations Fort Calhoun owes to ANB;

b. Mortgage dated December 29, 2014, and filed for record on January 5, 2015, as instrument number 2015-0013 in the office of the Allen County, Kansas Register of Deeds, as modified on February 10, 2015, which secured up to $480,000.00 of the obligations IOLA owes to ANB;

c. Assignment of Rents dated January 7, 2010, and filed for record on January 22, 2010, as instrument number 2010-0118 in the office of the Allen County, Kansas Register of Deeds;

d. Assignment of Rents dated January 7, 2010, and filed for record on January 22, 2010, as instrument number 2010-0118 in the office of the Allen County, Kansas Register of Deeds;

e. Hazardous Substances Certificate and Indemnity Agreement as set forth in instrument 2010-0019 filed in the office of the Allen County, Kansas Register of Deeds;

f. Assignment of Rents dated December 29, 2014, and filed for record on January 5, 2015, as instrument number 2015-0014 in the office of the Allen County, Kansas Register of Deeds; and

g. Hazardous Substances Certificate and Indemnity Agreement as set forth in instrument 2015-0015 filed in the office of the Allen County, Kansas Register of Deeds.

vi) **Default.** Upon any default by the Humboldt of obligations owed to ANB under this Plan, ANB shall give notice to the Debtor of default and thereafter the Humboldt shall have thirty (30) days from the date of the notice to cure the default, or such other default and cure period in the ANB Loan Documents, whichever is longer. If Debtor fails to cure the default within said Cure Period, ANB shall be entitled to relief from the Plan, any automatic stay, or any confirmation order and be entitled to enforce all rights and remedies available by law or in equity without further notice or hearing.

_Class 2_: This Class shall consist of the holders of Allowed Unsecured Claims not entitled to priority under the Code. Each holder of an Allowed Claim in Class 2 will be paid in full plus interest at the federal judgment rate in 6 equal installments beginning on the 1st day of the calendar month following the Effective Date. Notwithstanding any other provision of this Plan, Debtor shall have the option to repay the amounts due to Class 2 creditors at any time.

_Class 3_: Holders of Equity Security Interests in Debtor shall retain their Interests in Debtor.

## C.   **IDENTIFICATION OF CLASSES IMPAIRED BY THE PLAN**

Only Classes 1 and 3 are entitled to vote for or against the Plan. This means, in part, that the Plan modifies the contractual rights of holders of the claims and interests in each of those Classes, that such holders will not receive the Allowed Amounts of their Claims in cash on the Effective Date of the Plan or not be paid in accordance with the terms of the instruments giving rise to their respective claims, and that holders of Allowed Interests will not retain any fixed liquidation preference or be paid any fixed redemption amount for any Interest or equity securities held. Holders of Class 2 Claims are unimpaired under this Plan and statutorily deemed to have accepted the Plan. Notwithstanding the actual rejection by any Class or Classes, Debtor reserve the right to seek confirmation of the Plan in accordance with §1129(b) of the Bankruptcy Code.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

## D.      MEANS OF IMPLEMENTING THE PLAN

1.   **General Treatment**. Classes One through Two will be paid from the revenue derived from Humboldt's post-petition income and operations derived from its facility in Humboldt, Kansas.  Payments made to the holders of Allowed Class 1 and Class 2 Claims shall be paid directly from Humboldt.

2.   **Assumption of Executory Contracts and Unexpired Leases.**  All of Debtor's executory contracts and unexpired leases, shall be assumed under this Plan pursuant to 11 U.S.C. §365.

3.   **Distributions Addresses.**  Subject to the Bankruptcy Rules, all distributions made or required, under the Plan, shall be made: (i) if a proof of claim is filed in respect to a particular Claim, to the holder of such Allowed Claim at the address of such holder set forth in the relevant proof of claim, as such address may have been updated pursuant to the Bankruptcy Rule 2002(g); or (ii) if no proof of claim is filed in respect to a particular Claim, to the holder of such Allowed Claim at the address set forth in the relevant Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). However, if Debtor is notified in writing, no later than ten (10) Business Days after the Effective Date, of a change of address that provides an address different from that specified in (i) or (ii) above, then the distribution shall be made at the address contained in the written notification.  Nothing contained in the Plan will require Debtor to attempt to locate any holder of an Allowed Claim.

4.   **Resolution of Disputed Claims**.  Debtor shall file and serve a copy of each Objection upon the holder of the relevant Claim as soon as practicable, but in no event later than: (i) 90 days after the Effective Date; or (ii) such other time as may be fixed or extended by the order of the Bankruptcy Court. After the Effective Date, Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  No distribution or payment shall be made on account of a Disputed Claim unless, and until, such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.

5.   **Estimation of Disputed Claims**.  Debtor may at any time request that the Bankruptcy Court estimate any such Disputed Claim subject to estimation under §502(c) of the Bankruptcy Code and for which Debtor may be liable under this Plan, including any Disputed Claim for taxes, to the extent permitted by §502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim; and the Bankruptcy Court may retain jurisdiction to estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code at any time during litigation concerning any objection to the Claim or Interest.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount will constitute (at the option of Debtor to be exercised at the commencement of the estimation proceeding) either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court.

6.   **Unclaimed or Undeliverable Distributions**.  Any distributions under the Plan with respect to an Allowed Claim that are unclaimed or undeliverable for a period of sixty (60) days after the applicable distribution date thereof shall be classified as "Unclaimed Property."  Any distributions made under the Plan that become Unclaimed Property shall be returned to Debtor for disbursement in accordance with the terms of this Plan.

7.   **Ordinary Course of Business.**  Nothing herein or the Confirmation Order shall in any way limit Debtor's ability to operate in the ordinary course of business, or to take any steps reasonably necessary, in Debtor's business judgment, to protect and maintain the financial stability of Debtor's business operation, or the health, wellbeing, or condition of Debtor's assets, whether existing now or in the future

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

8.   **Further Authorizations.**   Debtor, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, the Plan.

9.   **Transfer Taxes.** The issuance, transfer, or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to or in connection with the Plan, or the making or delivery of an instrument of transfer under or in connection with the Plan shall not, pursuant to §1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

10.  **Recordable Order.** Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

11.  **Effectuating Documents and Further Transactions.**   Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## <u>ARTICLE III</u>
### (TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES)

In accordance with 11 U.S.C. § 365, the Debtor intends to assume any of its all its executory contracts and unexpired leases.  Unless already specifically assumed by the terms of this Plan, the Debtor shall have until the Effective Date of the Plan to file an application to assume or reject any executory contract that has not been previously assumed or rejected.  To the extent the Debtor fails to obtain approval to assume any executor contract it shall be deemed to be rejected as of the Effective Date.

Notwithstanding any contract provision, lease provision, or applicable non-bankruptcy law to the contrary, Debtor reserves the right to assign any assumed executory contract or unexpired lease in accordance with the Bankruptcy Code, provided, however, Debtor shall first cure any arrearages in the performance of said assumed or assigned executory contract or unexpired lease.

As soon as practicable, Debtor will file a notice of cure amount (the "Cure Notice") with the Court and serve the Cure Notice on all non-debtor parties to any executory contracts and unexpired leases (the "Contract Notice Parties") with Debtor that Debtor determines, in its business judgment, are necessary to maximize the value of the Estate.  The Cure Notice shall state the cure amount that Debtor believes is necessary to assume a specific executory contract and/or unexpired lease pursuant to §365 of the Bankruptcy Code (the "Cure Amount") and notify the Contract Notice Party that such party's contract or lease may be assumed and assigned to a purchaser of the assets to be identified at the conclusion of the auction.

If Debtor believes that there is no Cure Amount due, the Cure Notice shall clearly state as such. The Cure Notice shall set a deadline by which the non-debtor counter party shall file an objection to the proposed Cure Amount. Debtor will request that the Court set the deadline to object to any Cure Amount ten (10) days after service of the Cure Notice so as to be received by mail or email no later than 5:00 p.m. (Central time) on such day by Counsel to Debtor: (i) Patrick Turner, Turner Legal Group, LLC, 139 S. 144th Street, Suite 665, Omaha, Nebraska 68010, pturner@turnerlegalomaha.com; (ii) Paul Heiman, Erickson Sederstrom P.C., L.L.O., 10330 Regency Parkway Dr. Ste. 100, Omaha, NE 68114, pheim@eslaw.com.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

Unless a Contract Notice Party files an objection to the Cure Amount by the objection deadline, such Contract Notice Party shall be: (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming against Debtor or any other assignee of the relevant contract that any additional amounts are due or defaults exist, or that conditions to assumption and assignment must be satisfied under such contract or lease.

All timely objections to any Cure Amount must set forth: (i) the basis for the objection; (ii) the exact amount the objector asserts as the correct Cure Amount; and (iii) sufficient documentation to support the allegedly correct Cure Amount.

In the event an executory contract or unexpired lease is rejected by Debtor, any Person seeking a claim for damages by reason of the rejection of any executory contract or unexpired lease must file a proof of claim with the Bankruptcy Court before forty-five (45) calendar days following the Effective Date.  Such claim for damages shall be treated as a Class 2 Unsecured Claim.  **Any person who fails to file a proof of claim prior to this bar date is forever barred from asserting any such claim against Debtor, Bankruptcy Estate and/or the Reorganized Debtor and will receive nothing under this Plan.**

## ARTICLE IV
### (POST-CONFIRMATION BUSINESS OPERATIONS)

After the Effective Date, Debtor will continue to manage the business affairs of the Debtor without supervision by the Bankruptcy Court, and may enter into agreements to transfer, convey, encumber, use and lease any and all of its remaining assets or assets acquired hereafter.

## ARTICLE V
### (OWNERSHIP OF DEBTOR'S ASSETS)

As of the Effective Date of the Plan, the Reorganized Debtor shall be vested with ownership of all property of the Debtor's Chapter 11 Estate, as defined in 11 U.S.C. §541, and as provided for in the Plan. Upon such transfer, and pursuant to 11 U.S.C. §1141, the Reorganized Debtor shall own all such property free and clear of all liens, claims and interests of any person or entity, except as specifically provided in the Plan or the Order Confirming the Plan.

## ARTICLE VI
### (INSURANCE)

The Reorganized Debtor shall maintain insurance on its tangible personal and real property, if any, in an amount not less than the fair market value of that property and shall keep its property in good repair, reasonable wear and tear excepted.

## ARTICLE VII
### (ACCEPTANCE OR REJECTION OF PLAN)

Only Classes 1 and 3 are entitled to vote for or against the Plan.  Holders of Class 2 Claims are unimpaired under this Plan and statutorily deemed to have accepted the Plan.  Notwithstanding the actual rejection by any Class or Classes, Debtor reserve the right to seek confirmation of the Plan in accordance with §1129(b) of the Bankruptcy Code.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

## ARTICLE VIII
### (BINDING NATURE OF THE PLAN)

Upon the entry of the Order Confirming the Plan, the Plan shall bind Debtor, the Reorganized Debtor, all entities that are to acquire any property under the Plan, all creditors, and all equity security holders, whether or not their claims and interests are impaired under the Plan and whether or not they have accepted the Plan, as determined by 11 U.S.C. §1141.  Certain other claims shall be deemed released and other acts and actions as further specified in the Plan shall be enjoined.

This means, in part, that, except as provided by an express order of the Bankruptcy Court or pursuant to the terms of the Plan or the Order Confirming the Plan, all judicial, administrative or other actions or proceedings pending against Debtor or arising out of claims accrued prior to the confirmation of the Plan shall be permanently enjoined.

## ARTICLE IX
### (INJUNCTION AND DISCHARGE)

### A.   Termination of Stay and Discharge

The automatic stay imposed by 11 U.S.C. § 362(a) shall terminate when the Order Confirming the Plan becomes non-appealable. Except as otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the payments and distributions to be made hereunder shall discharge and release all existing debts and Claims, and terminate all Interests, of any kind, nature or description whatsoever against or in the Debtor, the Reorganized Debtor, or any of their assets or properties.  Except as provided in this Plan, upon the Effective Date, all Claims against and Interests in the Debtor, regardless of whether or not (1) a proof of Claim or Interest has been filed or is or was deemed filed, (2) such Claim or Interest was listed on any of the Debtor's Schedules, (3) such Claim or Interest was Allowed, or (4) the holder of such Claim or Interest has voted to accept or reject this Plan, shall be, and shall be deemed to be, discharged, released and terminated, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Debtor, Reorganized Debtor, the or any of Debtor's or Reorganized Debtor's assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim or Proof of Interest.  Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to 11 U.S.C. §524, from prosecuting or asserting any such discharged Claim against Reorganized Debtor or terminated Interest in Reorganized Debtor.  Furthermore, any person who has contractually agreed to release any Claims against the Debtor and any liens or interests in any Collateral shall be deemed to have released any such Claims and liens or interests in any such Collateral upon entry of the Confirmation Order.   Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

Pursuant to Section 1141(a) of the Bankruptcy Code, upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

## B.    <u>Injunction</u>

Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan, including without limitation from taking any of the following actions against, as applicable, the Debtor or Reorganized Debtor: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims and Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such Claims and Interests; (3) creating, perfecting, enforcing, renewing, extending, reviving, or continuing any Lien or encumbrance of any kind against such entities or the property of such entities on account of or in connection with or with respect to any such Claims and Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such Claims and Interests unless such entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims and Interests.

# ARTICLE X
## (EXONERATION AND RELIANCE)

Debtor, as well as its respective stockholders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors, and representatives shall not be liable, other than for willful misconduct, to any holder of a Claim or Interest, or any other entity, with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time prior to the Effective Date in connection with: (i) the management or operation of Debtor, or the discharge of their duties under the Bankruptcy Code; (ii) the implementation of any of the transactions provided for, or contemplated in, the Plan; (iii) any action taken in connection with either the enforcement of Debtor's rights against any entities or the defense of Claims asserted against Debtor with regard to the Chapter 11 Case; or (iv) any action taken in the negotiation, formulation, development, proposal, disclosure, Confirmation, or implementation of the Plan filed in this Chapter 11 Case.  Debtor, as well as its respective Equity Holders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors, and representatives may reasonably rely upon the opinions of their respective counsel, accountants, and other experts or professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of willful misconduct; provided, however, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination or finding of bad faith or willful misconduct.

# ARTICLE XI
## (MISCALLANEOUS IMPLEMENTATION OF THE PLAN)

The Plan will be implemented, in part, as follows:

1.  On the Effective Date, Debtor shall continue to operate in the ordinary course of business.

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

2.   The members or managers shall oversee implementation of the Plan and be fully empowered to act for the estate to implement the Plan.

3.   The assets of Debtor prior to the time of confirmation shall be all of the assets set forth in the Schedules and any assets acquired by Debtor after the Petition Date.

4.   The members or managers of Debtor shall take the necessary actions to prosecute any and all claims, causes of action and objections to Proofs of Claim or Proofs of Interest as determined to be appropriate and in the best interest of Debtor and the persons holding Allowed Claims.

5.   The membership agreements of Debtor shall be deemed to be amended in every way necessary to comply with and effectuate the terms and conditions of the Plan.

6.   The members or managers of Debtor shall have all of the powers granted by Nebraska law, and any other applicable state or federal laws.

a.   The members or managers of Debtor shall have the power to amend the Membership Agreements in any manner necessary to carry out the provisions of the Plan. The members or managers shall be entitled to use and exercise all pertinent provisions of state and federal law.

## ARTICLE XII
### (MODIFICATION OF AND AMENDMENTS TO THIS PLAN)

Prior to the entry of the Order Confirming this Plan, Debtor may propose amendments or modifications in accordance with 11 U.S.C. §1127. The Bankruptcy Court may, at any time, so long as it does not materially or adversely affect the interests of creditors and equity interest holders, remedy defects and omissions or reconcile any inconsistencies herein or in the Order Confirming the Plan as may be appropriate to effectuate this Plan.

## ARTICLE XIII
### (REMEDIES FOR DEFAULTS BY THE REORGANIZED DEBTOR)

If the Reorganized Debtor fails to comply with the terms hereof, subject to any applicable notice requirements, the holders of Claims and Interests materially harmed thereby may proceed against the Reorganized Debtor and its property to enforce this Plan, taking any action permissible under federal or state law, in any court of competent jurisdiction.

## ARTICLE XIV
### (RETENTION OF BANKRUPTCY COURT JURISDICTION)

Following confirmation of the Plan, the Bankruptcy Court shall retain, without limitation, jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Bankruptcy Court will retain jurisdiction, until the Plan is fully consummated, for the following purposes:

1.   Deciding the proper classification of any claim, determining the proper allowance subordination and liquidation for purposes of distribution of claims estimated for purposes of voting, and resolving objections to claims and Interests, and the reexamination of Allowed Claims for purposes of determining acceptances at the time of Confirmation, and the determination of such objections as may be

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

filed. The failure by the Reorganized Debtor to object to or to examine any Claim for the purpose of determining Plan acceptance, shall not be deemed to be a waiver of any right to object to or reexamine any Claim in whole or in part;

2.  Resolving all disputes regarding title to assets of the Reorganized Debtor and all disputes arising under the Bankruptcy Code and to determine all questions and disputes regarding assets of the Estate and all assets of the Reorganized Debtor existing as of the date of the Final Confirmation Order, to conduct any sales of assets of the Estate and assets of the Reorganized Debtor existing as of the date of the Final Confirmation Order, and all causes of action, controversies, disputes, or conflicts, known or unknown, whether or not subject to action pending as of the Confirmation Date, between a Debtor and any other party, including but not limited to, such Debtor's right to recover assets, avoid transfers, recover fraudulent transfers, offset claims, recover money or property from any party or return assets which were or are the property of the Estate or asset of the Reorganized Debtor existing as of the date of the Final Confirmation Order pursuant to the provisions of the Bankruptcy Code;

3.  Hearing all matters and deciding all issues regarding the prosecution by Debtor or the Reorganized Debtor of any Complaints or causes of action and preference claims against any person and adjudicate all claims, controversies, contested matters or adversary proceedings arising out of any purchases, sales, agreements or obligations made or undertaken by and between a Debtor and any third party during the pendency of the Reorganization Cases and such jurisdiction shall continue after the closing of these cases;

4.  Correcting of any defect, curing any omission, or reconciling any inconsistency between the Plan and the Order Confirming the Plan as may be appropriate to effectuate the purposes and intent of the Plan;

5.  Modifying the Plan after confirmation;

6.  Enforcing and interpreting the terms and conditions of the Plan, any securities issued under the Plan, or any other documentation effectuating the Plan and all controversies and disputes that may arise in connection with the enforcement, interpretation or consummation of the Plan;

7.  Resolve any claims or causes of action, including any avoidance actions arising by operation of U.S.C. §§ 542 through 551, against any creditors or equity security holders held by Debtor, the Reorganized Debtor or any creditors of Debtor;

8.  Entering any order required to enforce the rights and powers of the Reorganized Debtor;

9.  Determining any claim entitled to priority under §507 of the Bankruptcy Code;

10. Entering any order required to close Debtor's case;

11. Determining all matters relating to the assumption, assignment, or rejection of executory contracts and unexpired leases, including claims for damages from the rejection of any executory contract or unexpired lease within such time as the Bankruptcy Court may direct;

12. The Bankruptcy Court may liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent, disputed, or unliquidated Claims;

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

13. The Court may shorten or extend, for cause, the time fixed for doing any act or thing under the Plan, on such notice as the Bankruptcy Court shall determine to be appropriate;

14. The Court may enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem appropriate; and

15. The Court may determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE XV
### (REQUEST FOR CONFIRMATION)

Debtor requests entry of an Order confirming the Plan pursuant to §1129 of the Bankruptcy Code.

## ARTICLE XVI
### (MISCELLANEOUS)

1. **Payment Dates.** Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest for such delay, on the next Business Day.

2. **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nebraska.

3. **Severability**. In the event that any provision of the Plan is determined to be void or otherwise unenforceable following the Effective Date, then such provisions shall be severable from the Plan and shall in no way limit or affect the enforceability and operative effect of any and all other provisions hereof.

4. **Computations.** Any calculation of days shall exclude the first date of such period, shall include the last date and, in the event the last date is not a Business Day, shall include the first next Business Day.

5. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstain from exercising, or decline to exercise jurisdiction, or are otherwise without jurisdiction over any matter arising out of the Plan, such abstention or refusal shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matters.

6. **Successors and Assigns.** The rights, duties, and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Person

7. **Notices.** Except as otherwise herein provided, all notices required to be made in or under the Plan shall be in writing, and shall be mailed by United States mail:

   a)    If to Debtor, then:

In The Matter Of
Humboldt Assisted Living, LLC
Case No. BK 22-80861
Ch. 11 Plan

      (i)      to Debtor's Registered Agent;

      (ii)     with a copy to

      Patrick R. Turner
      Turner Legal Group, LLC
      139 S. 144th Street, #665
      Omaha, NE 68010

      b)     If to a Creditor, or holder of an Equity Interest, at the address set forth in Debtor's Schedules or on such Creditor's Proof of Claim.

      Any person may change the address at which he is to receive notices for the purpose of this Plan by sending written notice pursuant to this provision to the Person to be charged with knowledge of such change.

Respectfully submitted.

                           **Dimensions In Senior Living, LLC, et al., Debtors.**

      By:     /s/ *Patrick R. Turner*
                TURNER LEGAL GROUP, LLC
                Patrick Turner (NE Bar No. 23461)
                139 S. 144th Street, Suite 665
                Omaha, Nebraska 68010
                Telephone: (402) 690-3675
                pturner@turnerlegalomaha.com